786 F.2d 1164
 12 O.S.H. Cas.(BNA) 1848
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CONCRETE CONSTRUCTION COMPANY, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, AND
SECRETARY OF LABOR, Respondents.
 85-3197
 United States Court of Appeals, Sixth Circuit.
 2/28/86
 
 O.S.H.R.C.
 AFFIRMED
 ON APPEAL FROM THE OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION
 BEFORE: ENGEL, MILBURN and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner Concrete Construction Company ('petitioner' or 'the Company') brings this direct action pursuant to the Occupational Safety and Health Act of 1970 ('the Act'), 29 U.S.C. Sec. 660, seeking review of the decision of the Occupational Safety and Health Review Commission ('the Commission') which, in turn, affirmed the decision and order of an administrative law judge ('ALJ'). The ALJ upheld a citation and proposed penalty issued by the Secretary of Labor against petitioner for serious violations of section 5(a)(2) of the Act, 29 U.S.C. Sec. 654(a)(2), and of 29 C.F.R. Sec. 1926.550(a)(5)(i) for failing to maintain a minimum clearance of ten feet between a backhoe and energized overhead electrical lines, and of 29 C.F.R. Sec. 1926.550(a)(15)(iv), which requires designation of a person to observe clearance and give timely warning.[1] The Secretary charged that petitioner assigned the designated observer additional tasks which prevented him from discharging his observer function effectively. For the reasons that follow, we affirm the Commission's decision in all respects.
 
 I.
 
 2
 The citation at issue in this appeal stemmed from a tragic accident on October 19, 1982. On that date, while helping with the installation of a forty-inch water line, a Company employee was fatally injured when a backhoe contacted an energized overhead power line.
 
 
 3
 The evidence showed that the Company's employees were using a Caterpillar 235 backhoe excavator to dig a trench and to lay sections of pipe. The trench was located under three power lines, each carrying 7,620 volts. The trench was dug in sections eleven or twelve feet wide, long enough for one piece of pipe to be laid at a time. After digging a new section of trench, the backhoe operator would move the backhoe twenty feet back from the opening, in a line parallel to the road. The operator then rotated the backhoe's superstructure ninety degrees clockwise and extended the backhoe arm about thirty to thirty-five feet across the road to the point where the pipe sections were stored.
 
 
 4
 The employee designated to observe the clearance between the backhoe and the overhead power lines had the additional duty of assisting in lowering the pipe sections into the trench. The observer would attach a sling around the pipe and hook the sling and pipe to the bakhoe bucket. The backhoe operator then dragged the pipe toward the machine until enough leverage was gained to raise the pipe off the ground. The operator then pivoted the arm with its load back toward the open trench, moved the backhoe forward until the pipe was next to the trench, again pivoted the arm until the pipe was above the trench, and lowered it into the trench.
 
 
 5
 While the pipe was suspended near the trench, the observer would grasp the end of the pipe closest to the backhoe to steady it. When the pipe was ready to be lowered into the trench, the observer would be standing in front of the backhoe at the edge of the trench. The observer or a worker in the trench would then signal the backhoe operator to lower the pipe. On the day in question, as the arm of the backhoe was swung toward the center of the trench, its knuckle joint made contact with one of the lines electrocuting the observer.
 
 
 6
 Before trenching operations were begun, the Company had met with employees of the electric utility, reviewed the locations of utility poles and underground power lines, and discussed ways of ensuring that the trenching operation would not undermine the footings of the power poles. The height of the lines, the adequacy of the clearance from them, and the possibility of deenergizing or temporarily insulating the lines were not discussed because the Company's representative believed there would be sufficient room for the backhoe to safely perform its work.
 
 
 7
 After the meeting, but before digging operations began, the Company conducted a 'dry run' with the Caterpillar 235. On the basis of 'eyeball' estimates during this 'dry run,' the Company's job superintendent concluded that the wires ranged from twenty-five to thirty-five feet in height and that there would be about thirteen feet of clearance. The record does not reflect whether the 'dry run' was conducted under a midpoint, where the lines would hang lowest, or whether a pipe and sling arrangement similar to that being used at the time of the alleged violation was employed. No actual measurements as to the height of the lines were taken during the 'dry run.'
 
 II.
 A.
 
 8
 As previously stated, the Company was cited for two violations. First, the Secretary charged the Company with violating 29 C.F.R. Sec. 1926.550(a)(15)(i) which requires that, unless electrical power lines have been deenergized or insulated, a ten-foot clearance be maintained between the lines and all parts of a crane. The parties agree that in order to establish a violation, it is necessary for the Secretary to show by a preponderance of the evidence that (1) the cited standard applies, (2) there was a failure to comply with the standard, (3) employees had access to the violative condition, and (4) the cited employer either knew or could have known of the condition with the exercise of reasonable diligence.
 
 
 9
 The ALJ found that the cited standard, although entitled 'Cranes and derricks,' nonetheless applied to the type of equipment used in this case, a Caterpillar excavator. The Company conceded that at the time of the accident, the ten-foot clearance requirement was not met. The ALJ held that in light of the fatal injury, employees obviously had access to the violative condition. Finally, over the Company's arguments to the contrary, the ALJ found that the Company knew or could have known of the condition with the exercise of reasonable diligence. In this connection, the ALJ observed that the ten-foot clearance requirement includes a complete circle around the energized line and that the lowest points of the line were measured at 22.03, 32.34, 26.86, 27.21 and 27.89 feet at the point of the accident. The ALJ relied on the testimony of the backhoe operator to conclude that the highest part of the boom at the critical moment when the boom was below the power lines was approximately eighteen feet. The ALJ thus concluded that had reasonable diligence been exercised in actually measuring the exact midpoint heights of the line compared against the highest point of the backhoe, the measurement clearly would have disclosed the violative conditions. The Commission held the ALJ's factual findings to be fully supported by the record. We agree.
 
 
 10
 Petitioner's first argument is that the Commission erred by affirming a citation based upon a safety regulation not at issue. The regulation petitioner was charged with violating, 29 C.F.R. Sec. 1926.550(a)(15), entitled 'Cranes and derricks,' does not, by its terms, apply to backhoes. The Commission found the regulation applicable through the operation of 29 C.F.R. Sec. 1926.600(a)(6), which provides:
 
 
 11
 All equipment covered by this subpart [O] shall comply with the requirements of Sec. 1926.550(a)(15) when working or being moved in the vicinity of power lines or energized transmitters.
 
 
 12
 Petitioner concedes that the backhoe is covered by Subpart O. However, petitioner reasons that the Commission's ruling is nonetheless in error because it was not cited for a violation of section 1926.600. Petitioner argues that the Commission has impermissibly amended the citation and complaint sua sponte.
 
 
 13
 We find this argument unconvincing. A review of the record discloses that petitioner was quite aware that the standard at issue was 29 C.F.R. Sec. 1926.550(a)(15). The fact that this regulation was found applicable to petitioner through the operation of a separate regulation in no way prejudiced petitioner. Accordingly, even if we accept petitioner's claim that the citation was amended, we find no reversible error. See Donovan v. Williams Enterprises, 744 F.2d 170, 176-77 (D.C. Cir. 1984) (change of legal theory on appeal without remand appropriate where 'possibility of prejudice is so remote as to make remand wasteful and unnecessary').
 
 
 14
 Petitioner's next argument is that the one instance of noncompliance involved herein was brought about by an employee's failure to maintain clearance and that this case thus falls within the rule of such cases as General Electric Co. v. O.S.H.R.C., 540 F.2d 67 (2d Cir. 1976), which petitioner asserts require that 'when a regulation governs employee conduct, unless the regulation states when employee conduct is required for compliance, the burden is on the Secretary . . . to provide evidence of what more the employer could have done, and some basis that such efforts would have been feasible and successful.' Petitioner's Brief at 17.
 
 
 15
 We find abundant evidence in the record that the Secretary met his burden as envisioned by petitioner. In particular, we note the ALJ based his decision in part on his determination that 'it is clear that the exercise of reasonable diligence in measuring the exact midpoint heights of the line and the highest point of the backhoe would have disclosed the violative conditions.' Accordingly, there is substantial evidence to support the finding of a serious violation of 29 C.F.R. Sec. 1926.550(a)(15)(i). See Usery v. Hermitage Concrete Pipe Co., 584 F.2d 127, 132 (6th Cir. 1978) (violation is 'serious' if there is a possibility of an accident and a substantial probability of serious injury).
 
 B.
 
 16
 The second citation involved a violation of 29 C.F.R. Sec. 1926.550(a)(15)(iv) which requires that '[a] person shall be designated to observe clearance of the equipment and give timely warning for all operations where it is difficult for the operator to maintain the desired clearance by visual means.' Commission Chairman Buckley and Commissioner Cleary divided over whether this observer requirement was violated.
 
 
 17
 Commissioner Cleary agreed with the ALJ that the employer failed to comply with the standard. Commissioner Cleary felt the standard required more than the mere provision of an observer but rather the Company was required not to assign the observer additional duties that prevented him from assuring that no part of the equipment or its load came within ten feet of the energized power lines. Commissioner Cleary relied on the backhoe operator's testimony that when a pipe section was about to be lowered into the trench--the moment when the backhoe boom was closest to the power line--it was 'crucial' that the attention of the observer be directed to his additional task of guiding the pipe into the trench. Thus, Commissioner Cleary felt the Company did not designate a person to 'observe clearance' and 'give timely warning' to the backhoe operator within the meaning of the standard.
 
 
 18
 On the other hand, Chairman Buckley felt the standard did not require that an observer have no other duties to perform and that he devote all his attention to observing clearance. Chairman Buckley felt the standard required only that an employee be designated to observe clearance and give timely warning and that the record did not show that this was not done. According to Chairman Buckley, the arm of the backhoe had already reached the point at which it was closest to the power lines at the point where the pipe would be lowered into the ground, and the observer's gaze would shift to the pipefitters in the trench.
 
 
 19
 At the time of the review by the Commission, it had only two members as a result of a vacancy. The two Commissioners resolved this impasse by agreeing to affirm the ALJ's disposition but accorded the decision the precedential value of an unreviewed ALJ's decision.
 
 
 20
 Petitioner argues the Commission has, in effect, required a higher standard of conduct than that required by the plain language of the regulation. Petitioner complains that the regulation does not inform an employer of what 'more' is required and that an employer cannot be left to guess what a standard requires.
 
 
 21
 We defer to the interpretation of the regulation by Commissioner Cleary and the ALJ as we find it to be reasonable. See Concrete Construction Co. v. O.S.H.R.C., 598 F.2d 1031, 1033 (6th Cir. 1979). The purpose of the observer regulation obviously is to ensure that where it is difficult for the backhoe operator to see for himself whether he is maintaining clearance from the power lines, another person will be available to fulfill that function. This purpose cannot be achieved if the designated person is assigned additional tasks that interfere with his ability to observe. To put it another way, a person who cannot in fact observe is not an observer. Under this interpretation of the regulation, we do not believe the employer is required to do anything 'more' than what is required by the plain language of the regulation: designate a person to observe clearance. See supra note 1.
 
 
 22
 Petitioner's final argument is that the requirements of section 1926.550(a)(15)(i) and subsection (iv) are alternative requirements and that it need only comply with one. We find the plain language of the regulation refutes this interpretation, and we reject petitioner's interpretation in favor of the Commission's. See Concrete Construction Co. v. O.S.H.R.C., supra, 598 F.2d at 1033.
 
 III.
 
 23
 Accordingly, we AFFIRM the Commission's decision.
 
 
 
 [1]
 29 C.F.R. Sec. 1926.550(a)(15) provides in pertinent part:
 (15) Except where electrical distribution and transmission lines have been deenergized and visibly grounded at point of work or where insulating barriers, not a part of or an attachment to the equipment or machinery, have been erected to prevent physical contact with the lines, equipment or machines shall be operated proximate to power lines only in accordance with the following:
 (i) For lines rated 50 kV. or below, minimum clearance between the lines and any part of the crane or load shall be 10 feet;
 * * *
 (iv) A person shall be designated to observe clearance of the equipment and give timely warning for all operations where it is difficult for the operator to maintain the desired clearance by visual means;