Raymond J. DONOVAN, Secretary of Labor, Petitioner,

v.

**WILLIAMS ENTERPRISES, INC., Respondent.**

**WILLIAMS ENTERPRISES, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.**

Nos. 83–1687, 83–1690.

United States Court of Appeals, District of Columbia Circuit.

Argued March 19, 1984.

Decided Sept. 18, 1984.

Arthur J. Amchan, Atty., Dept. of Labor, Washington, D.C., with whom Dennis K. Kade and Judith N. Macaluso, Attys., Dept. of Labor, Washington, D.C., were on the brief, for petitioner in No. 83–1687 and cross-respondent in No. 83–1690. Shelley D. Hayes, Atty., Dept. of Labor, Washington, D.C., also entered an appearance for petitioner in No. 83–1687.

James Brent Clarke, Jr., Washington, D.C., for respondent in No. 83–1687 and cross-petitioner in No. 83–1690.

Before EDWARDS, BORK and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Williams Enterprises, Inc. was one of several contractors involved in construction of the Hart Senate Office Building in Washington, D.C. After a series of on-site inspections, an OSHA compliance officer cited Williams for failing to comply with several of the construction industry safety regulations in 29 C.F.R. Part 1926 (1983). Both citations were vacated by an administrative law judge following an evidentiary hearing. On review, the Occupational Safety and Health Review Commission affirmed the dismissal of one citation but reinstated the second. These cross-appeals followed. In No. 83–1687, the Secretary of Labor seeks to reverse that portion of the Commission's order vacating the citation issued to Williams for violating 29 C.F.R. § 1926.500(d)(1) (1983) ("citation one"). In No. 83–1690, Williams seeks to reverse the Commission's affirmance of the citation issued for violating 29 C.F.R. §§ 1926.-750(b)(2)(i) and 1926.105(a) (1983) ("citation two"). Jurisdiction and venue in this court are proper under 29 U.S.C. § 660(a), (b) (1982).

I.

The standards regulating safety in the construction industry are found in 29 C.F.R. Part 1926 (1983). Subpart R of

those regulations specifically pertains to the structural steel erection industry. 29 C.F.R. §§ 1926.750 through 1926.752 (1983). Subpart R is not, however, the exclusive source of safety regulation for businesses like Williams which are engaged in steel erection. The general construction standards "apply to all hazards native to the steel erection industry unless a specific standard in Subpart R sets forth a different mandatory or preferred method for protection against the particular hazard in question." *L.R. Willson & Sons, Inc. v. Donovan,* 685 F.2d 664, 669 (D.C.Cir.1982).

Williams' primary responsibility on the project was to install corrugated sheets of metal decking on the steel frame of the building. The decking material was lifted by crane and stacked across steel I-beams in the structure's skeletal frame. Williams' employees would then move the material by hand to those areas on a floor where building plans called for it. When moving sheets of the decking, employees were required to traverse beams that were four to twelve inches in width. Before the individual sheets were welded to the frame of the building, the decking was spread loosely to form a temporary floor. This floor was used as a work surface and offered protection to employees working on higher levels. Ultimately, the decking was used as a form to pour the permanent concrete floor.

Williams' contract required it first to install decking on the third floor, and then on each odd-numbered floor up to the ninth level. Williams' employees thus began "decking" 47 feet above the ground. Because the architectural design called for numerous atria and open courtyards, some extending through several levels of the structure, decking did not cover the entire surface area of each floor. Consequently, Williams' employees were required to move decking material across open areas on several occasions. To do this, individual pieces of decking were used to construct makeshift bridges[1] spanning the openings.

As a result of the inspections conducted during October of 1978 and continuing through January of 1979, Williams was cited for violating both general safety and Subpart R standards. On November 1, 1978, an OSHA compliance officer observed four Williams employees moving sheets of metal decking across a "bridge" on the fourth floor of the building. The bridge—made by interlocking three or four individual sheets of decking material—extended 30–40 feet across an atrium and exposed the employees to a fall of 58 feet. The compliance officer cited Williams for a serious violation of 29 C.F.R. § 1926.500(d)(1) (1983) (the "platform" regulation).[2] That regulation requires "every open-sided floor or platform 6 feet or more above adjacent floor or ground level [to] be guarded by a standard railing, or the equivalent ... on all open sides, except where there is an entrance to a ramp, stairway, or fixed ladder."[3] The Secretary later amended citation one to charge a willful and/or repeated violation of that regulation.[4]

The second citation alleged four separate and willful violations of the Subpart R standard set out in 29 C.F.R. § 1926.-750(b)(2)(i) and the general standard in 29 C.F.R. § 1926.105(a) (1983). Section 1926.-

1. Because the label that should be put on the interlocked sheets of decking is at issue, our reference to this structure as a "bridge" or a "makeshift bridge" is intended to be neutral.

2. A "serious" violation exists "if there is a substantial probability that death or serious physical harm could result from a condition which exists ... unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(k) (1982). A serious violation exposes the employer to a fine of not more than $1,000 for each violation. *Id.* § 666(b).

3. A "platform" is defined as
 [a] working space for persons, elevated above the surrounding floor or ground, such as a balcony or platform for the operation of machinery and equipment.
 29 C.F.R. § 1926.502(e) (1983).

4. A willful violation exposes the employer to a civil penalty of $10,000 or less for each violation. 29 U.S.C. § 666(a) (1982). The definition of willful is examined *infra* p. 17.

750(b)(2)(i) requires the maintenance of a "tightly planked and substantial floor ... two stories or 30 feet" (whichever is less) below the area where skeletal steel erection is being performed. Section 1926.-105(a) requires the use of safety nets "when workplaces are more than 25 feet above the ground ... [and] where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical." Citation two specifically charged Williams with violating each of the cited standards in connection with the company's failure to protect employees from (1) an interior fall hazard of 47 feet while installing decking on the third floor of the building on October 5, 1978; (2) an interior fall hazard of the same type on October 6, 1978; (3) an interior and exterior fall hazard of 58 feet while walking a beam on the fourth floor building perimeter on January 11, 1979; and (4) an interior fall hazard of 40 feet while installing decking on the elevator machine room roof on October 5, 1978. Appendix ("App.") at 12–13.

After an evidentiary hearing, an Administrative Law Judge dismissed both citations. App. at 110–33. In the ALJ's view, Subpart R "preempted" any application to this case of the general industry regulations in 29 C.F.R. Part 1926. App. at 127–28, 130. He thus vacated citation one which alleged a violation of the "platform" rule in section 1926.500(d)(1), as well as those portions of citation two charging violations of Section 1926.105(a). App. at 128, 130.[5] The ALJ then dismissed the Subpart R violations in citation two. According to the judge, the numerous atria incorporated into the building's structure prevented and excused Williams from compliance with section 1926.750(b)(2)(i) which would otherwise have required the maintenance of a floor beneath the areas where employees worked. App. at 129.

On review before the Occupational Safety and Health Review Commission, the ALJ was reversed to the extent that he ruled Subpart R the exclusive source of safety regulation for skeletal steel erection. App. at 161–64. Nonetheless, the Commission vacated citation one because, in its view, the bridge used by Williams to move sheets of decking through the atrium on November 1, 1978 did not constitute a "platform" within the meaning of the cited standard. Id. at 165. The Commission stated:

> To regard each of such surfaces as platforms that require guarding would mean that, as the work progresses, each piece of decking on which employees stood to place the next piece of decking would have to be guarded. Such a requirement would not only be infeasible, but would also unnecessarily expose employees to fall hazards for the time involved in erecting guardrails. Thus, the use by employees of interlocked temporary decking sections as working surfaces from which to install or transport other sections of decking does not convert those working surfaces into platforms within the meaning of section 1926.-500(d)(1).

App. at 166.[6]

The Commission reversed the ALJ on the merits of citation two and reinstated, for the most part, each charge in the citation. App. at 166–73. With respect to the alleged violations of section 1926.750(b)(2)(i), the Commission rejected as inconsistent with the testimony presented the ALJ's finding that building design prevented and excused compliance. App. at 166–67. Williams' argument that it need not comply with fall protection standards because the endangered employees' work was undertaken to provide fall protection for those working above them was also rejected. All

---

5. As an alternative ground for his decision to dismiss the § 1926.105(a) violations, the ALJ found—in an apparent reference to the affirmative defense of "greater hazard"—that the use of safety belts during the installation of decking would have been more dangerous than not using belts at all. App. at 132.

6. Alternatively the Commission found, even assuming the bridge was a platform, that the Subpart R regulation requiring rope safety railings around the periphery of temporary metal decked floors would preempt the more general standard in § 1926.500(d)(1). App. at 165.

employees must be protected, the Commission stated, "even while they are in the process of installing safety protection." *Id.* at 166.

The Commission did vacate alleged violations of section 1926.105(a), but only to the extent that those allegations sought to sanction Williams for the company's failure to protect employees from *interior* fall hazards on various occasions. According to the Commission, the interior fall protection in section 1926.105(a) was duplicative of the interior protection offered by section 1926.750(b)(2)(i) under which violations had been found to exist. App. at 168. Williams had, however, violated section 1926.-105(a) by failing to protect an employee from an *exterior* fall hazard; that portion of the citation was affirmed and reinstated. App. at 170–71.[7]

Finally, the Commission held that the violations set out in citation two were properly characterized as "willful" under the appropriate standards. Williams "intentionally disregarded the terms of the cited standard" after being informed on several occasions that its safety efforts were sorely deficient. App. at 172–73. For essentially the same reasons, the Commission further found that Williams "was deficient in good faith." *Id.*

## II.

On appeal in No. 83–1687, the Secretary argues that the Commission impermissibly narrowed the application of the platform rule and its substantive requirements to situations where compliance with those requirements would be "reasonable." Brief for Secretary of Labor at 10–16. The Secretary's position is that once something is called a platform, it must be treated like a platform unless a variance is obtained or an affirmative defense to compliance estab-

lished. The Commission erred, the argument goes, in that once it recognized that the makeshift bridge used by Williams' employees was a platform, it had no discretion to vacate the citation for noncompliance with the requirements in 29 C.F.R. § 1926.-500(d)(1).

■ We agree with the Secretary, as a general matter, that " 'every' elevated floor or platform [must] have a guardrail." Brief for Secretary of Labor at 11. The express language of the standard permits no other reading. That observation does not, however, solve the dilemma in this case because we think the Secretary misreads the rationale of the Commission's decision. That decision, in our view, holds only that the bridge over which Williams' employees carried decking material was not a platform within the meaning of the regulation. The Commission did not assume, as the Secretary's brief argues, that the bridge was a platform under section 1926.500(d)(1), and then decide that it would not be reasonable to require the installation of guardrails on platforms of this type. While there is some ill-chosen and inartful language in the opinion that suggests the Secretary's reading, on the whole, the fundamental errors ascribed to the Commission do not pertain.[8]

That the Secretary's argument is to a great extent based on a misreading of the Commission's holding does not foreclose our review of the Commission's disposition of citation one. That citation charged Williams with "noncompliance with section 1926.500(d)(1) because certain of its employees were exposed to a 58–foot fall distance while moving decking over a 'platform' that lacked standard guardrails." App. at 164. The evidence presented to support the citation can fairly be summarized as follows. The compliance officer

---

**7.** The Commission did note that the interior fall protections in § 1926.750(b)(2)(i)—protecting an employee only from two-story falls—were not completely satisfactory and that those protections could be supplemented by a non-Subpart R standard. The Secretary had, however—in his attempt to provide that extra protection—cited the wrong standard. App. at 168–69.

**8.** However, to the extent we read out of the Commission's rationale those errors asserted by the Secretary, we again note our belief that once a surface is determined to be a platform, it is subject to the guardrail and, if applicable, the toeboard requirements in § 1926.500(d)(1).

testified that he observed "a platform on the fourth floor" of the building and that "[t]here were no guardrails of any type on the platform." *Id.* at 386a–60. The "platform" was laid on "some steel beams" in an "open area ... on the north end of the building ... through to the south end." *Id.* at 386a–62. The compliance officer further testified that employees used the platform to "transfer decking across the [open] area to get to the other side." *Id.* at 386a–63, 390. Other witnesses testified that they had moved decking across similar "platforms" on other occasions. *Id.* at 119.

Based on this evidence, the ALJ found "unrefuted that [Williams'] deckers used a makeshift platform, also referred to by witnesses as a bridge, to transport decking from where it was stacked on one side of a permanent opening within the structure to the other side." App. at 130. This finding is well-documented in the record and Williams does not challenge it. The evidence also confirms that the bridge was used *only* as a means of moving decking material from one place to another; there is no evidence showing that the bridge was used as a work surface by employees to install decking. Nor is there any suggestion that some other type of work was performed on the bridge.

■ On these facts, we agree with the Commission that the interlocked sheets of decking did not constitute a "platform" within the meaning of the regulations. A platform is defined as a "working space for persons, elevated above the surrounding floor or ground, such as a balcony or a platform *for the operation of machinery and equipment.*" 29 C.F.R. § 1926.502(e) (1983) (emphasis added). A makeshift bridge used *only to move material across* an open area does not fall within that definition. What is required, we think, is that

some construction-related task be performed *on* the bridge—one that requires employees to work from the bridge or to remain on it for some time. Only then could a "bridge" such as the one at issue here be considered a "working space" and thus a "platform" under the regulations.[9]

On the other hand, Williams' employees undeniably used the decking to make a bridge or passageway on which materials were moved through the interior of the building. And it is not in dispute that those employees were completely unprotected from fall hazards while they moved decking across the bridge. We think a different subsection of the regulation speaks to this condition. Section 1926.-502(f) defines a "runway" as a "passageway for persons, elevated above the surrounding floor or ground level, such as ... a walkway between buildings." 29 C.F.R. § 1926.502(f) (1983). On an operational level, this describes the situation at issue here. We think the makeshift bridge was properly a "runway" under the regulations and that the Secretary erred by charging Williams with a violation of the platform regulation.

■ Under the facts of this case, however, we think it proper to reverse the Commission's decision dismissing citation one. "A change of legal theory on appeal without remand is sometimes appropriate in civil cases if the parties are not prejudiced thereby ...." *Cowin & Co. v. Federal Mine Safety & Health Review Commission,* 612 F.2d 838, 841 (4th Cir.1979) (citations omitted). Where entry of judgment by the appellate court would occasion some possibility of prejudice, such as where additional evidence or argument might affect the outcome of the litigation, the proper course is to "allow the Secretary to amend the petition to allege the same

---

9. The Commission strayed too far from the facts before it when it stated that "the use by employees of interlocked temporary decking sections as working surfaces from which to install or transport other sections of decking does not convert those working surfaces into platforms within the meaning of section 1926.500(d)(1)." App. at 165. While the use of temporary deck-

ing solely to "transport other sections of decking" does not create a platform, it seems that once the sheets of decking become a work surface from which decking is installed, the work surface may properly be considered a platform. That conclusion, however, would depend on the precise facts of the situation—facts not before the Commission or this court.

factual violations," *id.*, under the proper section of the regulation.[10] In the present case, the possibility of prejudice is so remote as to make remand wasteful and unnecessary.

The substantive requirements of the "platform" and "runway" rules are found in the section entitled "Guarding of open-sided floors, platforms and runways." *See* 29 C.F.R. § 1926.500(d). Those requirements are virtually identical; both require standard guardrails and, if appropriate, toeboards. *Compare* 29 C.F.R. § 500(d)(1) *with* 29 C.F.R. § 500(d)(2). Moreover, the condition alleged to be violative of the Act was identical under either subsection (d)(1) or subsection (d)(2). Similarly, the method by which the Secretary required abatement of the hazard did not depend on which subsection of section 1926.500(d) was cited—as noted, both required Williams to take identical precautions. *Cf. Usery v. Marquette Cement Manufacturing Co.*, 568 F.2d 902, 906–07 (2d Cir.1977).

It simply cannot be said that Williams would suffer any prejudice by virtue of our reversal of the Commission's dismissal of the citation without remand. Were we to remand, every aspect of the litigation below would take the track it initially followed. Williams' proof would be the same and it would acquire no new affirmative defenses. Williams clearly had notice of the subject matter of the Secretary's complaint and what step it should take to abate the hazard. Having refused to take any steps, the company should not now be allowed to reap the benefit of further delay from the compliance officer's technical error. In *National Realty & Construction Co. v. OSHRC*, 489 F.2d 1257 (D.C.Cir. 1973), Judge Wright accurately reminded us of the stakes at issue where an issue litigated at an OSHA hearing has been decided by the agency although the pleadings did not squarely raise that issue: "ci-

tations under the 1970 Act are drafted by non-legal personnel, acting with necessary dispatch. Enforcement of the Act would be crippled if the Secretary were inflexibly held to a narrow construction of citations issued by his inspectors." *Id.* at 1264. Judge Wright's observations would have directed us to affirm a Commission decision reinstating the first citation under the proper section of the regulations. They are no less apposite here, where the Commission failed to correct the Secretary's harmless error. In light of our reading of the "runway" regulation, it is a foregone conclusion that the Commission would sustain citation one when amended to charge a violation of that regulation. Accordingly, we reverse the Commission's order vacating citation one.

### III.

#### A.

Our review of the Commission's decision in No. 83–1690 affirming, for the most part, the Secretary's charges in citation two is "limited to determining whether that order is supported by substantial evidence in the record." *L.R. Willson & Sons, Inc. v. OSHRC*, 698 F.2d 507, 512 (D.C.Cir.1983) (citation omitted). In citation two, the Secretary alleged that Williams had exposed, on four separate occasions, its employees to interior fall hazards by failing to use "a substantial floor no more than 30 feet below them" as required by 29 C.F.R. § 1926.750(b)(2)(i). App. at 156–57. That section "sets forth clearly the requirements imposed on employers," *L.R. Willson & Sons, Inc. v. Donovan*, 685 F.2d 664, 667 (D.C.Cir.1982), and mandates that "tightly planked and substantial floor[s]" be used to provide fall protection unless their use

---

**10.** Administrative pleadings are "very liberally construed and very easily amended." *Nat'l Realty & Construction Co. v. OSHRC*, 489 F.2d 1257, 1264 (D.C.Cir.1973). Amendments in OSHA proceedings are governed by Fed.R.Civ.P. 15. 29 U.S.C. § 661(f) (1982). The amendment

rules are intended to "facilitate a proper disposition on the merits," *United States v. Hougham*, 364 U.S. 310, 317, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1964), and amendments to the pleadings to conform to the evidence may be made "even after judgment," Fed.R.Civ.P. 15(b).

would be "not practicable." *See id.* at 677.[11]

The Commission found that the Secretary had established a "prima facie case of noncompliance" with that section. App. at 166. Testimony offered on behalf of both parties provides more than adequate support for this conclusion and, on appeal, Williams does not appear to contest the prima facie case. *See* Brief of Respondent/Cross-Petitioner Williams Enterprises, Inc. at 8. Williams does argue, however, that compliance with the cited standard was impossible, and that compliance with the alternative standard in section 1926.-750(b)(1)(ii) would have exposed its employees to a greater hazard than would noncompliance. Brief of Respondent/Cross-Petitioner Williams Enterprises, Inc. at 8–9. These are affirmative defenses, and in both instances Williams must bear the burden of proving the facts necessary to establish its claims. *See, e.g., True Drilling Co. v. Donovan,* 703 F.2d 1087, 1090–91 (9th Cir.1983); *Faultless Division, Bliss & Laughlin Industries, Inc. v. Secretary of Labor,* 674 F.2d 1177, 1189 (7th Cir.1982); *Southern Colorado Prestress Co. v. OSHRC,* 586 F.2d 1342, 1351 (10th Cir.1978).

The impossibility (or infeasibility) defense encompasses both technological and economic infeasibility. *See Faultless Division,* 674 F.2d at 1189 (citing cases).

Only the former is at issue here. Williams admits that its employees were working with no flooring beneath them. Brief of Respondent/Cross-Petitioner Williams Enterprises, Inc. at 8. The company contends that it could not provide flooring because "the plans did not call for flooring in those instances." *Id.* According to Williams, "[t]here was nothing on which to lay a floor [because] [t]he areas were open from the ground to the level where men were working laying the metal deck." *Id.*

These conclusory allegations do not establish an impossibility defense. Photographic evidence demonstrates that flooring could have been used in each instance. *See* App. at 57–58 (Exhs. C–5 and C–6), 60–62 (Exhs. C–8, C–9 and C–10); *see also id.* at 67 & n. 8 (Commission's reliance on the photographic evidence to reject this claim). Oral testimony by Williams' own witness also belies the company's claim. We agree with the Commission's finding that "[a]lthough [Williams] did introduce general evidence about the existence of gallery areas in the building, such general evidence failed to establish that temporary floors could not have been placed beneath the employees ...." *Id.* at 166–67, 170. Williams points to no particular evidence to contradict the Commission's findings and specific record support shows the baseless nature of the company's impossibility defense.[12]

11. Even where the use of temporary floors is "not practicable," however, an employer must still comply with § 1926.750(b)(1)(ii), which states:

> On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet. The nets shall be hung with sufficient clearance to prevent contact with the surface or structures below.

29 C.F.R. § 1926.750(b)(1)(ii) (1983).

12. Williams' second affirmative defense of "greater hazard" would apparently depend on this court's finding—as the company argued— that compliance with § 1926.750(b)(2)(i) was "not practicable" within the meaning of that section. *See* Brief of Respondent/Cross-Petitioner Williams Enterprises, Inc. at 8–9. Because we reject that argument as unsupported by the evidence, it is unnecessary to respond to

the company's "greater hazard" claim. We note, however, that to the extent Williams seeks to establish a greater hazard defense to compliance with § 1926.750(b)(2)(ii), it has not carried its burden of proof on the issue. To establish the "greater hazard" defense, Williams must show (1) that the hazards of compliance are greater than the hazards of noncompliance; (2) that alternative means of protecting employees are unavailable, and (3) the unavailability or inappropriateness of obtaining a variance. *See, e.g., True Drilling Co. v. Donovan,* 703 F.2d 1087, 1090 (9th Cir.1983); *General Electric Corp. v. Secretary of Labor,* 576 F.2d 558, 561 (3d Cir. 1978). The company's evidence on (1) and (2) was unpersuasive and controverted by credible testimonial and photographic evidence. Moreover, Williams never sought to obtain a variance from the agency. Since he failed to do so, no greater hazard defense is possible. "An employer is required to seek a variance as a precondition to asserting the greater hazard defense

Citation two also charged Williams with violating 29 C.F.R. § 1926.105(a) (1983) of the general construction standards in connection with the same incidents on which the Secretary premised his section 1926.-750(b)(2)(i) charges. Section 1926.105(a) states:

Safety nets shall be provided when work-places are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.

 The Commission vacated the section 1926.105(a) charges with regard to the *interior* fall hazards presented in each incident on the ground that the charges were duplicative of those affirmed by the Commission under Subpart R. App. at 170–71. The Commission ruled, however, that Williams had violated section 1926.-105(a) with respect to the *exterior* fall hazard occasioned on January 11, 1979, when the compliance officer observed a Williams' employee walking a beam on the building's perimeter unprotected by either a safety belt or other fall protection. App. at 171. This latter decision is plainly correct.[13] The requirements of section 1926.-750(b)(2)(i) do not protect workers from exterior fall hazards. *L.R. Willson & Sons, Inc. v. Donovan,* 685 F.2d at 671–73. The exterior fall hazard in this incident was thus properly cited under the general standard in section 1926.105(a). *See* 685 F.2d at 673.

Rather than challenge the evidence supporting the charge, Williams contends that consistent with its decision to vacate the other section 1926.105(a) charges, the Commission should have dismissed the allegation as to exterior falls. Brief of Respondent/Cross-Petitioner Williams Enterprises, Inc. at 10–11. The Commission's decision to vacate those charges, the company argues, was based on its finding that 29 C.F.R. § 1926.28(a) (1983) was the exclusive standard under which safety belt protection could be required.[14] This argument misconstrues the Commission's reason for dismissing those allegations. The section 1926.105(a) charges were dismissed solely because the only interior fall protection that section could offer was made unnecessary by similar protection in Subpart R. The Commission discussed section 1926.-28(a) only to show that the Secretary could require the use of safety belts under that standard as a means of protecting against interior fall hazards. Our reading of this portion of the Commission's opinion is consistent with the clear import of the *L.R. Willson* cases. *See L.R. Willson & Sons, Inc.,* 685 F.2d at 673 (citations under "the general construction standards found in sections .28(a) *and* .105(a)" not foreclosed by Subpart R standards); *L.R. Willson & Sons, Inc.,* 698 F.2d at 511 (Section .750 (the functional equivalent of section .105(a)) was "not intended to relieve employers of their general obligation, expressed in section 1926.28(a), to take appropriate measures to protect workers from hazardous falls of less than 30 feet.").

### B.

Finally, Williams contests the characterization of citation two as "willful." While that term is not defined in the regulations, courts have generally held that a willful violation of the Act constitutes "an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements." *Cedar Construction*

----

...." *True Drilling Co.,* 703 F.2d at 1091; *Noblecraft Industries, Inc. v. Secretary of Labor,* 614 F.2d 199, 205 (9th Cir.1980).

**13.** Because the Secretary did not challenge the Commission's decision vacating the § 1926.-105(a) charges with respect to interior falls, we express no opinion as to that portion of the Commission's disposition of citation two.

**14.** Section 1926.28(a) states:

The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees.

29 C.F.R. § 1926.28(a) (1983).

*Co. v. OSHRC,* 587 F.2d 1303, 1305 (D.C. Cir.1978).

■■■ After a careful review of the evidence, the Commission found that "the record amply supports" the "willful" characterization. App. at 172. We agree. Prior to issuing the citations in January of 1979, the Secretary—through his representative—repeatedly warned Williams' supervisory personnel about the company's failure to comply with construction site safety standards. He also advised those supervisors as to the specific steps that the company should take to bring its project into compliance. The Secretary's warnings and advice went unheeded and the violations continued. These facts alone are sufficient to establish "intentional disregard of" and "plain indifference to" OSHA's regulations. These facts, however, are not alone. There was substantial testimony by Williams' employees that they "frequently worked" without temporary floors or safety belts in the presence of company supervisors. *Id.* at 173. Testimony offered by Williams' own president indicates his awareness of certain standards and his decision to forego compliance with those standards. *See id.* at 430–32, 436–37 (testimony of Frank Williams, Jr.). Finally, there was evidence that Williams had been adjudged in violation of similar standards in the past. *See* App. at 63–109.

The company's challenge to the finding of "willful" depends primarily on its claim that the Hart Senate Office Building was a unique and structurally complex project that "presented never before encountered problems with regard to limiting exposure to fall hazards." Brief of Respondent/Cross-Petitioner Williams Enterprises, Inc. at 11. This claim is specious. While construction of the project may have been both unique and complex, it does not necessarily follow that compliance with safety standards posed similarly unique and complex problems. There is simply no support in the record that establishes either the correlation Williams seeks to draw or the company's ultimate conclusion.

Williams also claims that the "willful" finding is controverted by the company's "formidable [efforts] to maintain safer working conditions" and the fact that "[s]afety and compliance with OSHA regulations were the subject of continued discussions." Brief of Respondent/Cross-Petitioner Williams Enterprises, Inc. at 12. We note, however, that Williams never sought to include in these "continued discussions" the senior supervisor at the jobsite who testified not only that he lacked safety training, but that Williams had never given him any training related to OSHA standards in the fifteen years he had worked for the company. Employee safety was never discussed with the company president or any of its supervisory personnel *until* OSHA inspections of the project began. *See* App. at 346–50, 173. "It is precisely because the Company made no effort whatsoever to make anyone with supervisory authority at the job site aware of the OSHA regulation that the Company can be said to have acted with plain indifference and thereby acted willfully." *Georgia Electric Co. v. Marshall,* 595 F.2d 309, 320 (5th Cir.1979).

We find it difficult to take the company's claims relating to the characterization of citation two very seriously. The "willful" determination is supported by substantial evidence and thus affirmed.

For the reasons given, the order of the Occupational Safety and Health Review Commission in No. 83–1687 is hereby reversed, and its order in No. 83–1690 is hereby affirmed.