CONIE CONSTRUCTION,
INC., Petitioner,

v.

Robert B. REICH, Secretary of Labor, and
the Occupational Safety and Health Review Commission, Respondents.

No. 94–1592.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 14, 1995.

Decided Oct. 30, 1995.

Roger L. Sabo, Columbus, OH, argued the cause for petitioner.

Bruce Justh, Counsel, Department of Labor, argued the cause for respondent. Joseph M. Woodward, Associate Solicitor, and Barbara U. Werthmann, Counsel, Department of Labor, Washington, DC, were on the brief.

Before: BUCKLEY, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the court filed PER CURIAM.

PER CURIAM:

Conie Construction, Incorporated (Conie) petitions the Court to review and set aside an order of the Occupational Safety and Health Review Commission (Commission) upholding a citation issued by the Occupational Safety and Health Administration (OSHA). The Commission found that Conie willfully violated OSHA's regulations by inadequately sloping the walls of a trench and assessed a penalty of $21,000. We deny Conie's petition.

## I.

On November 6, 1991 Conie dug a trench to install a sewer manhole. That same day, an OSHA compliance officer inspected Conie's trench, took some measurements and concluded that the walls were sloped too steeply. The compliance officer was informed that Conie employees had worked in the trench that day.

Conie received a citation from OSHA alleging a violation of 29 C.F.R. § 1926.652(a)(1), which requires employers to implement an adequate protective system for employees working in excavations. In particular, the citation alleged that Conie willfully failed to slope its trench in accordance with the applicable OSHA sloping standard as required by 29 C.F.R. § 1926.652(b). OSHA proposed a penalty of $21,000.

Conie contested the citation and a hearing was held before an administrative law judge (ALJ). The compliance officer testified that he had measured the trench to be 20 feet by 24 feet at the top and 21 feet deep and had estimated the bottom to be 4 feet wide. He further testified that Conie's foreman, Russell Kildarger, acknowledged that the walls were not sloped according to OSHA's regulations but that Kildarger believed the trench was safe nevertheless. Finally, he testified that in the past three years OSHA had twice before cited Conie for inadequately protecting the walls of excavations.

Several witnesses testified for Conie. A soils engineer opined that the soil in the trench was firm enough to allow the walls to be sloped safely at a ratio of ½:1 (that is, ½ foot horizontal to 1 foot vertical, or a 63° angle). Foreman Kildarger testified, among other things, that he was familiar with OSHA's regulations, that he used a slope of ½:1 because he thought that would be safe and that the top of the trench "was about 22 foot wide." Joint Appendix (JA) 176. Joseph Conie, the company's co-owner and safety director, testified that he was familiar with OSHA's standards and that he "couldn't see anything wrong with the trench there." JA 244.

The ALJ ruled in Conie's favor and vacated the citation. The ALJ observed that, because the trench walls were dug in Type A soil (the most stable type of soil), OSHA's regulations allowed a maximum slope of ¾:1 (53° angle). See 29 C.F.R. § 1926.652(b)(2) and Subpart P, App. B, Table B–1.1 (maximum allowable slope in excavation less than 20 feet deep in Type A soil "shall be" ¾:1). The ALJ found that the Secretary of Labor (Secretary) failed to show by a preponderance of the evidence that Conie did not meet that standard.

The Commission reversed the ALJ's decision after finding that Conie willfully failed to use a slope of ¾:1 and assessed the Secretary's recommended penalty of $21,000. Conie appeals.

## II.

### A.

■ Conie first challenges the Commission's finding of a violation. Specifically, Conie contends that the record does not support the finding that the walls of its trench were sloped steeper than ¾:1. The Commission's finding is conclusive if it is supported by

substantial evidence on the record. 29 U.S.C. § 660(a).

If Conie had used a slope of ¾:1, the top of its trench would have measured at least 26½ feet across.[1] The Commission found that the top of the trench measured less than 26½ feet across. It referred to Kildarger's testimony that the trench was "about 22 foot wide" at the top. Conie urges that Kildarger was only estimating. But the Commission also referred (in an accompanying footnote) to the compliance officer's testimony that Kildarger was aware the trench had not been sloped in compliance with OSHA's standards. The Commission also noted that the compliance officer had measured the top of the trench to be 20 feet by 24 feet. In short, substantial evidence supports the Commission's finding that Conie violated the applicable OSHA sloping standard.

■ Conie nevertheless argues that the Commission took too formalistic a view of OSHA's regulations and that a ¾:1 slope would have been sufficient, but not necessary, to comply with the regulations. Conie asserts that the maximum allowable slopes set out in Appendix B to Subpart P of OSHA's regulations are not mandatory, that the regulations are "performance oriented" and that the crucial question is whether the employer has put in place an "adequate protective system."

The short answer is that the regulations are performance oriented only insofar as they allow the employer to use alternative methods of protection in certain circumstances. *See generally* 29 C.F.R. § 1926.652(b), (c). For example, instead of relying on the maximum allowable slopes set forth in Appendix B, Conie could have used an alternative support system, *e.g., id.* § 1926.652(c) (shield system), or a steeper slope *if* designed by a registered professional engineer, *id.* § 1926.652(b)(4). But Conie did not use any alternative method and instead chose to rely on the sloping standards set out in Appendix B. Consequently, the regulations plainly required Conie to use a maxi-

mum slope of ¾:1. *See id.* § 1926.652(b)(2) (maximum allowable slopes "*shall be* determined in accordance with the conditions and requirements set forth in appendices A and B"; Appendix B in turn provides that "[a]ll simple slope excavation 20 feet or less in depth *shall have* a maximum allowable slope of ¾:1") (emphasis added).

**B.**

■ Conie next challenges the Commission's finding of a willful violation. The Occupational Safety and Health Act of 1970 (Act) provides an enhanced civil penalty for willful violations of the Act. 29 U.S.C. § 666(a). "Although the Act does not define the term 'willful,' courts have unanimously held that a willful violation of the Act constitutes an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements." *Ensign–Bickford Co. v. OSHRC,* 717 F.2d 1419, 1422 (D.C.Cir.1983) (internal quotation marks omitted), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984). Here, the Commission found that Conie's violation was willful largely because Conie was aware of OSHA's excavation requirements but chose not to comply with them. Substantial evidence supports the finding. Foreman Kildarger testified he was aware of the sloping standard (allowing a maximum slope of ¾:1) but opted for a slope of ½:1 because he thought it adequate. And the compliance officer testified that Kildarger acknowledged the walls were not sloped in accordance with OSHA's regulations but that he (Kildarger) believed the trench was nonetheless safe.

**C.**

Conie next challenges the Commission's penalty. In assessing a civil penalty the Commission must consider "the size of the [employer's] business ..., the gravity of the violation, the good faith of the employer, and the history of previous violations." 29 U.S.C. § 666(j). The Commission imposed the Secretary's proposed $21,000 penalty (30 per

---

1. The evidence established that the trench was at least 20 feet deep, the first 15 feet in soil, the last 5 feet in rock. Because the trench extended 15 feet deep in soil, each wall should have been cut

back 11¼ feet (15 feet × ¾). Each pair of parallel walls, then, should have been cut back a total of 22½ feet. With the 4 foot width at the bottom of the trench added, the top width is 26½ feet.

cent of the statutory maximum for a willful violation) after concluding that the gravity of Conie's violation was moderate to high and that Conie lacked good faith, had a history of previous violations and was a moderate-sized company. Conie challenges the Commission's gravity evaluation.

■ In determining the gravity of the violation, the Commission credited the testimony of Conie's expert that the trench was not likely to collapse. But the Commission also noted that "the excavation was very deep, over 20 feet deep, and quite narrow at the bottom.... If a wall were to collapse around an employee, serious injuries or death would most surely result." JA 43. Conie maintains that the Commission should have given little, if any, weight to the seriousness of the harm which likely would have resulted had an accident occurred; rather the Commission should have assessed the probability that an accident or injury would occur. Contrary to Conie's assertion, however, gravity may be based on both "the severity of any possible injury and the probability of an accident." *Secretary of Labor v. Dream Set Fashion, Inc.,* 16 O.S.H.Cas. (BNA) 1876, 1877 (Rev.Comm'n 1994). This is nothing new. *See Secretary v. Tacoma Boatbuilding Co., Inc.,* 1 O.S.H.Cas. (BNA) 1309, 1311 n. 6 (Rev.Comm'n 1973) ("Both the probability of an accident's occurrence and the probable severity of resulting injuries, as well as the exposure to a hazard, constitute the gravity of a violation.").[2] It was not inappropriate for the Commission to consider both factors here.

### D.

■ Finally, Conie complains that the Commission failed to address whether the violation was *de minimis. See* 29 U.S.C.

§ 658(a) (*de minimis* violation "has no direct or immediate relationship to safety or health"). But assuming *arguendo* that the Commission (as opposed to the Secretary) has the statutory authority to determine whether a violation is *de minimis, compare Reich v. OSHRC,* 998 F.2d 134, 137–39 (3d Cir.1993) *with id.* at 139–45 (Becker, J., concurring and dissenting), the Commission need not do so in every case—especially in a case where substantial evidence supports a finding that the employer willfully committed a violation of moderate to high gravity.

Moreover, we question whether the Commission can ever declare a violation *de minimis* when an employer chooses to rely on, but fails to conform to, the maximum allowable slopes in Appendix B. When an employer fails to conform to the sloping standards, it fails to install an "adequate protective system," *see* 29 C.F.R. § 1926.652(a); that is, the employer has failed to put in place "a method of protecting employees from cave-ins." *See id.* § 1926.650(b) (definitions of "protective system" and "sloping"). A "cave-in" is defined as not merely the falling or sliding of soil but rather the "sudden movement [of soil] into the excavation ... *in sufficient quantity so that it could entrap, bury, or otherwise injure and immobilize a person." Id.* (emphasis added). In effect, when an employer chooses the sloping standards in Appendix B (instead of an allowable alternative method) but fails to conform to them, the employer has failed to put in place an adequate system to protect employees from serious injury or death. By defining "cave-in" as it does, the standard is necessarily a life-saving one. We therefore question if a violation can be *de minimis* in these cir-

---

2. *See also Secretary of Labor v. Merchant's Masonry, Inc.,* 17 O.S.H.Cas. (BNA) 1005, 1007 (Rev.Comm'n 1994) ("Although the likelihood of a fall may not have been high, there was substantial likelihood that there would be a serious injury in the event of a fall from a height of 18 feet."); *Secretary of Labor v. Broshear Contractors, Inc.,* 16 O.S.H.Cas. (BNA) 2094, 2097 (Rev. Comm'n 1994) ("In light of the slight probability of an accident but high seriousness of any injuries in the event of one, we find the gravity of this 8–foot–deep trench violation to be moder-

ate."); *Secretary of Labor v. Wheeling–Pittsburgh Steel Corp.,* 16 O.S.H.Cas. (BNA) 1780, 1785 (Rev.Comm'n 1994) ("the gravity of the electrical violation is high because, even though the likelihood of injury might not have been great, [the employees] were exposed to the hazard of serious injury or death"); *Secretary of Labor v. CF & T Available Concrete Pumping, Inc.,* 15 O.S.H.Cas. (BNA) 2195, 2199 (Rev.Comm'n 1993) (balancing low probability of accident with high probability that accident would result in death or severe injury).

cumstances.[3]

**3.** Judge Williams believes that this paragraph is unnecessary to the disposition of the case and that, to the extent that the Commission has any authority to apply a *de minimis* criterion, it would be proper for it to consider not only the nature of the harm to be averted but also its probability under the circumstances constituting the violation.