**KASPAR WIRE WORKS,
INC., Petitioner,**

v.

**SECRETARY OF LABOR, Respondent.**

**No. 00–1392.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 11, 2001.

Decided Nov. 6, 2001.

Vic H. Henry argued the cause and filed the briefs for petitioner.

John Shortall, Attorney, U.S. Department of Labor, argued the cause for respondent. With him on the brief were Joseph M. Woodward, Associate Solicitor, and Bruce F. Justh, Counsel.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Kaspar Wire Works, Inc. petitions for review of the decision of the Occupational Safety and Health Review Commission holding it responsible for hundreds of willful violations of the Occupational Health and Safety Act, 29 U.S.C. §§ 651–678 (1990), and imposing penalties for each violation. Kaspar Wire contends that the decision must be reversed for lack of substantial evidence to support the findings of willfulness, and because the per instance penalties are unlawful. We deny the petition.

I.

Kaspar Wire Works, Inc. is a manufacturer of custom wire products and newspaper racks located in Shiner, Texas. Be-

tween 1982 and 1989, the Occupational Safety and Health Administration ("OSHA") conducted inspections and issued no citations for injury and illness recordkeeping violations. However, following a six-month inspection by nine OSHA inspectors in 1990, the Secretary of Labor issued two citations against Kaspar Wire for over 400 alleged willful and serious violations of various standards under the Act, proposing aggregate penalties of $1,236,000. An Administrative Law Judge found that 382 violations were willful and assessed an aggregate penalty of $257,700.

The Occupational Safety and Health Commission affirmed the findings of willfulness and the assessment of per-instance penalties for most of the recordkeeping violations, resulting in an aggregate penalty of $224,050. The Commission relied on evidence that the same personnel had been responsible for recording serious injuries and illnesses at Kaspar Wire since 1970, that Kaspar Wire had properly reported such incidents in the past, as reflected in the results of OSHA inspections from 1982–89, and that OSHA's 1990 inspection revealed that Kaspar Wire failed to record 357 injuries on form OSHA No. 200, comprising 86.5% of the injuries and illnesses that occurred in its facility during 1988 and 1989. Included among the unreported injuries were second- and third-degree burns, a hand ligament injury resulting in 171 lost work days, at least eight finger amputations (including one employee who lost three fingers and lost eight weeks of work and another employee who lost two fingers and lost nine weeks of work), several broken bones, more than 30 eye injuries, and hundreds of lacerations—all of

which were only recorded on Kaspar Wire's first-aid log. The Commission concluded that these were knowing and willful violations that reflected a "profound[ ] change[ ]" in Kaspar Wire's recordkeeping practices. One Commission member dissented on the ground that the evidence did not support a finding of willfulness, but only carelessness. The Commission reversed the Administrative Law Judge's finding of willfulness with respect to errors in Kaspar Wire's restricted work day recording, because it had never recorded such items and had never been cited by OSHA for such failures in the past.

## II.

At the time of the citations in question, the Occupational Health and Safety Act ("the Act") provided that "Any employer who willfully or repeatedly violates the requirements of ... regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation." 29 U.S.C. § 666(a) (1990).[1] The Act further provided:

Each employer shall make, keep and preserve, and make available to the Secretary [of Labor] or the Secretary of Health and Human Services, such records regarding his activities relating to this chapter as the Secretary [of Labor], in cooperation with the Secretary of Health and Human Services, may prescribe by regulation as necessary or appropriate for the enforcement of this chapter or for developing information regarding the causes and prevention of occupational accidents and illnesses....

---

1. The penalty amounts were increased in November 1990 to "not more than $70,000 for each violation, but not less than $5,000 for each willful violation." *See id.* (1999); Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 3101, 104 Stat. 1388 (1990). In assessing penalties against Kaspar Wire,

the Commission applied the version of the statute in effect in September 1990, when the citations were issued. The other statutory and regulatory provisions relevant to this opinion have remained unchanged since that time.

*Id.* § 657(c)(1). The OSHA recordkeeping regulations require an employer to:

> (1) maintain in each establishment a log and summary of all recordable occupational injuries and illnesses for that establishment; and (2) enter each recordable injury and illness on the log and summary as early as practicable but no later than 6 working days after receiving information that a recordable injury or illness has occurred.

29 C.F.R. § 1904.2(a) (2000). The regulation further specifies that "[f]or this purpose form OSHA No. 200 or an equivalent which is as readable and comprehensive to a person not familiar with it shall be used. The log and summary shall be completed in the detail provided in the form and instructions on form OSHA No. 200." *Id.* "Recordable" is defined in the regulations to mean:

> any occupational injuries or illnesses which result in:
>
> (1) Fatalities, regardless of the time between the injury and death, or the length of the illness; or
>
> (2) Lost workday cases, other than fatalities, that result in lost workdays; or
>
> (3) Nonfatal cases without lost workdays which result in transfer to another job or termination of employment, or require medical treatment (other than first aid) or involve: loss of consciousness or restriction of work or motion. This category also includes any diagnosed occupational illnesses which are reported to the employer but are not classified as fatalities or lost workday cases.

*Id.* § 1904.12(c). The Commission views the recordkeeping requirements as "play[ing] a crucial role in providing the information necessary to make workplaces safer and healthier." *General Motors Corp., Inland Div.*, 8 O.S.H. Cas. (BNA) 2036 (1980).

Kaspar Wire did not argue either to the Commission or to the court that its first aid log qualified as an "equivalent" to OSHA form No. 200. Rather, Kaspar Wire admitted in its brief and at oral argument that it did not comply with OSHA recordkeeping requirements. For three reasons it contends, however, that there is no basis for the Commission's finding that its violations were willful. First, its recordkeeping personnel were trained by OSHA staff in 1971, and over the years OSHA inspectors repeatedly reviewed its practices without ever citing Kaspar Wire for a recordkeeping violation until the 1990 inspection. Second, an OSHA inspector testified that it was reasonable for Kaspar Wire to assume that its recordkeeping practices were in compliance with OSHA regulations. Third, there is no record evidence that Kaspar Wire changed its recordkeeping practices at some point in the 1980s. Kaspar Wire concludes, therefore, that its reasonable reliance precludes a finding of willfulness.

 Neither the Act nor the OSHA regulations define the meaning of the term "willful." This circuit has defined a "willful violation" in the OSHA context as "an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements." *Conie Construction, Inc. v. Reich*, 73 F.3d 382, 384 (D.C.Cir.1995). The Commission relied on the Fifth Circuit's virtually identical definition of a "willful violation" as "one involving voluntary action, done with either an intentional disregard of, or plain indifference to, the requirements of the [OSHA] statute." *Georgia Elec. Co. v. Marshall*, 595 F.2d 309, 319 (5th Cir.1979). Under either definition, actual malice is not required; it is sufficient that there be substantial evidence of voluntary and intentional disregard for or indifference to the law. *See Conie*, 73 F.3d at 384; *Georgia*

*Elec.,* 595 F.2d at 318–19. Consistent with our standard of review, *see National Eng'g & Contracting Co. v. OSHRC,* 45 F.3d 476, 481 (D.C.Cir.1995), we conclude that there was substantial evidence to support the Commission's finding of willfulness.

Contrary to Kaspar Wire's position, the fact that the same recordkeeping personnel who had been trained by OSHA staff were still in charge in 1988 and 1989 actually supports the Commission's conclusion that Kaspar Wire knowingly and voluntarily *chose* to flout the recordkeeping requirements. That is, Kaspar Wire could have no doubt about what the regulations required. Kaspar Wire points to testimony by one OSHA inspector that inspections conducted between 1982 and 1989 indicated that Kaspar Wire was complying with OSHA's recordkeeping requirements, and that if Kaspar Wire's recordkeeping practices remained unchanged it could reasonably assume in March 1990 that its practices conformed to OSHA standards. Another inspector testified that in his view Kaspar Wire's recordkeeping practices had not changed over time. However, "the Commission is not bound by the representations or interpretations of OSHA Compliance Officers." *L.R. Willson & Sons, Inc. v. Donovan,* 685 F.2d 664, 676 (D.C.Cir.1982). Further, two other OSHA inspectors testified that based on the 1990 inspection, Kaspar Wire had clearly and intentionally violated the recordkeeping requirements of the statute, *see* 29 U.S.C. § 657(c)(1), and that the Department of Labor's Bureau of Labor Statistics had independently confirmed that all of the injuries in question should have been recorded on OSHA form No. 200.

From this evidence, the Commission could reasonably infer, *see United States Testing Co., Inc. v. NLRB,* 160 F.3d 14, 19 (D.C.Cir.1998), that sometime prior to 1988, Kaspar Wire's recordkeeping practices underwent a dramatic change that was not explainable by changes in the number of persons it employed. As the Commission found, in addition to the sheer magnitude of the recordkeeping violations—which the Commission characterized as "far exceed[ing] that of any other case decided by the Commission"—the nature of the injuries that were unreported belies Kaspar Wire's claim that its actions were merely negligent or careless. The violations at issue were not mere technical omissions; rather, the violations involved the failure to report injuries as serious as finger amputations, broken bones, eye injuries and severe burns that resulted in prolonged absences from work. Kaspar Wire thus cannot reasonably contend that there was confusion about whether injuries of this nature had to be reported on form OSHA No. 200 or its equivalent. Nor can Kaspar Wire seriously contend that it was entitled to rely on its lack of prior violations to undermine a finding of willfulness. *See Cedar Constr. Co. v. OSHRC,* 587 F.2d 1303, 1306 (D.C.Cir.1978); *cf. Herman v. Palo Group Foster Home, Inc.,* 183 F.3d 468, 473 (6th Cir.1999); *National Steel and Shipbldg. Co. v. OSHRC,* 607 F.2d 311, 317 (9th Cir.1979). Otherwise, an employer with no prior citations could choose to violate a regulatory obligation without risking a finding of willfulness, contrary to common sense and the definition of a "willful violation" in the OSHA context.

*Conie* is instructive. In that case, a construction company challenged an OSHA citation for the willful violation of a regulation governing the slope of a trench that had been excavated to install a sewer manhole. The OSHA compliance officer testified that the company foreman acknowledged that the walls of the trench did not comply with the sloping regulation, but nevertheless opted to ignore the requirement because he thought the trench was safe. The court upheld the Commission's finding of willfulness in view of the

evidence that the company knew of the regulation and intentionally chose not to comply with OSHA's excavation requirements. *See Conie,* 73 F.3d at 384; *see also Donovan v. Williams Enterprises, Inc.,* 744 F.2d 170, 179–80 (D.C.Cir.1984); *Finer Foods Sales Co., Inc. v. Block,* 708 F.2d 774, 777–78 (D.C.Cir.1983). Similarly, here the Commission could reasonably find that Kaspar Wire knew of and intentionally chose to ignore OSHA recordkeeping regulations, and thereby jeopardized not only the ability of the Secretary and OSHA to carry out their statutory responsibilities, but the health and safety of Kaspar Wire's employees.

Kaspar Wire's attempt to rely on cases cited by the Secretary fails, for they clearly support the Secretary's position. For example, although the court concluded in *L.R. Willson,* 685 F.2d at 676, that a finding of willfulness with respect to an ambiguous safety requirement could not be sustained, this result was so only because the employer had not been given adequate notice of what was required. Kaspar Wire makes no claim there was ambiguity about what the recordkeeping regulations required. *See also Brock v. Morello Bros. Constr., Inc.,* 809 F.2d 161 (1st Cir.1987); *Williams Enterprises,* 744 F.2d at 179–80; *Cedar Constr.,* 587 F.2d at 1306.

Kaspar Wire protests nonetheless that the Commission's finding of willfulness makes no sense because Kaspar Wire had nothing to gain by violating the recordkeeping regulations. All of the incidents not reported on form OSHA No. 200 were reported on the first aid log. Also, according to Kaspar Wire, the incidence of reported violations for 1988 and 1989 on the form 200 exceeded the cutoff of 4.3% needed to avoid future on-site safety inspections. These contentions ignore two salient points. First, the Secretary has chosen to fulfill her statutory responsibilities by requiring injury reporting on form

OSHA No. 200. *See* 29 U.S.C. § 657(c)(1),(c)(2) and (g)(2); 29 C.F.R. § 1904.2(a). There was evidence before the Commission that Kaspar Wire was an employer whose records were designed to show a low lost workday injury rate that would exempt them from an on-site safety inspection. On three previous occasions, OSHA inspections of Kaspar Wire revealed a lost workday injury rate that was below the national average, thereby exempting the company from a comprehensive safety inspection. As the Secretary states in her brief:

> Kaspar [Wire]'s indifference to recordkeeping requirements and inattention to accurate reporting produced a picture of working conditions that would mislead employees and OSHA concerning the true extent of the hazards at Kaspar [Wire]. By obscuring these injuries, Kaspar [Wire] effectively perpetuated the hazards to which its employees were exposed and it disabled an alarm mechanism which might have alerted employees and OSHA to problem areas in the workplace.

Respondent's Brief at 58.

█ Second, the Commission's finding of willfulness did not require evidence of motive. As the Supreme Court explained in *TWA v. Thurston,* 469 U.S. 111, 126 n. 19, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), "an employer's action may be 'willful' . . . even though he did not have an evil motive or bad purpose." *See also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 617, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Although to find willfulness the Commission had to find that Kaspar Wire's conduct involved more than mere negligence or carelessness, *see McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), there was substantial evidence of Kaspar Wire's knowing and intentional disregard of the recordkeeping require-

ments. *See Conie,* 73 F.3d at 384. The Commission took note of both the unprecedented volume of violations and the seriousness of the unreported injuries, as well as the abundant evidence of Kaspar Wire's actual knowledge of what was required under OSHA regulations based on its own admissions and its past recordkeeping practices. Essentially, then, the Commission was confronted with a record of unabashed violations involving serious injuries to employees in the face of certain knowledge of what was required. Congress and the Secretary, not Kaspar Wire, have been entrusted with determining how best to ensure worker health and safety, and given the evidence of Kaspar Wire's egregious flouting of regulatory requirements, the Commission's finding of willfulness is amply supported by the record.

 Kaspar Wire's challenges to the sufficiency of the evidence supporting the Commission's findings that it willfully failed to install point-of-operations guards on a punch press, in violation of 29 C.F.R. § 1910.217(c)(1), and failed to ground portable lamps, in violation of 29 C.F.R. § 1910.304(f)(5)(V), are meritless. An OSHA inspector photographed the unguarded press, and based on the same photograph, an OSHA supervisor determined that a citation was warranted because the picture of one employee using the machine indicated that multiple employees were probably using the machine. As to the lamps, the evidence was unrebutted that the lamps were portable and "clamp" type. Because the lamps were handled roughly and used to illuminate trucks that were being loaded, the Commission could reasonably infer that employees were exposed to a danger of electric shock.

### III.

 Kaspar Wire also challenges the lawfulness of the per instance penalties on statutory and procedural grounds. Contending that the Secretary lacks statutory authority to assess per instance penalties for "egregious and willful" violations, which is not among the four levels of violations set forth in the Act, *see* 29 U.S.C. § 666(a)-(c), Kaspar Wire claims that Congress did not authorize per instance penalties. Kaspar Wire relies on a structural argument based on the Coal Mine Health & Safety Act of 1969 ("Coal Mine Act"), 30 U.S.C. § 801 *et seq.* (1996), which Congress enacted one year before it enacted the Occupational Health and Safety Act. Kaspar Wire further contends that even if the Secretary has authority to impose per instance penalties, her new policy violates the Administrative Procedure Act either because her policy is a rule subject to notice and comment under 5 U.S.C. § 553, or because her policy was not published in the *Federal Register.* None of these contentions has merit.

Section 17(a) of the Act provides that "[a]ny employer who willfully or repeatedly violates the requirements of . . . regulations prescribed . . . may be assessed a civil penalty of not more than $10,000 *for each violation.*" 29 U.S.C. § 666(a) (emphasis added). The plain language of the Act could hardly be clearer. The Commission has long agreed that per instance citations and penalties are allowed. *See Pepperidge Farm, Inc.,* 17 O.S.H. Cas. (BNA) 1993, 2001 (1997); *Sanders Lead Co.,* 17 O.S.H. Cas. (BNA) 1197, 1204–05 (1995); *J.A. Jones Constr. Co.,* 15 O.S.H. Cas. (BNA) 2201, 2213–14 (1993); *Caterpillar, Inc.,* 15 O.S.H. Cas. (BNA) 2153, 2173 (1993); *Hoffman Constr. Co.,* 6 O.S.H. Cas. (BNA) 1274, 1275 (1978). The availability of such penalties is consistent with the general principle that each violation of a statutory duty exposes the violator to a separate statutory penalty. *See, e.g., Missouri, Kansas, & Texas Ry. Co. v. United States,* 231 U.S. 112, 119, 34 S.Ct.

26, 58 L.Ed. 144 (1913); *Used Equip. Sales, Inc. v. Dep't of Transp.*, 54 F.3d 862, 865 (D.C.Cir.1995). The statutory language is consistent, moreover, with discretionary per instance assessments for "egregious and willful" violations, which the OSHA field operations manual defines as "willful, repeated and high gravity serious citations and failures to abate." *Caterpillar, Inc.*, 15 O.S.H. Cas. (BNA) 2153, 2170 (1993) (*quoting* OSHA Instruction CPL 2.45A, Field Operations Manual, Ch. VI, § A.2.i.(4), at VI–8 (Sept. 21, 1987)).

■■■■■ Kaspar Wire's reliance on the language of the Coal Mine Act is misplaced. Section 111(a) of the Coal Mine Act (since repealed and redesignated as the Federal Mine Safety and Health Act of 1977) provides that "[e]ach occurrence of a violation of a mandatory health or safety standard may constitute a separate offense." 30 U.S.C. § 820(a). However, as the Secretary points out, there is nothing to suggest that Congress patterned the Act after the Coal Mine Act. The Coal Mine Act employed a significantly different administrative structure, with rulemaking, enforcement and adjudicatory functions concentrated in the Secretary of the Interior. *See* 29 U.S.C. §§ 801 *et seq.* (1976). Only in 1977 was the administrative structure made to conform to the Act's, with the vesting of rulemaking and enforcement authority in the Secretary of Labor and the establishment of an independent review commission for adjudications. *See* 30 U.S.C. §§ 814–816, 961(a) (1986). In any event, Congress is not limited in the language it may use across statutes to provide that per instance penalties are authorized. Moreover, even had Congress had not spoken directly to the question of per instance penalties, the Secretary's interpretation would be entitled to deference given her official duty, specialized expertise, investigatory knowledge, and other experience relevant to carrying out the purposes of the Act. *See United*

*States v. Mead Corp.*, 533 U.S. 218, ——, 121 S.Ct. 2164, 2175, 150 L.Ed.2d 292 (2001) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 138, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); *cf. Anthony Crane Rental, Inc. v. Reich*, 70 F.3d 1298, 1302 (D.C.Cir.1995) (citing *Martin v. OSHRC*, 499 U.S. 144, 150–51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991)); *Used Equip. Sales*, 54 F.3d at 864–65.

■■■■■ Nor was the imposition of per instance penalties unlawful on procedural grounds. The Secretary's decision to assess per instance penalties reflects use of an enforcement tool within her authority. *Cf. United Steelworkers of Am. v. Herman*, 216 F.3d 1095, 1097 (D.C.Cir.2000). Her decision followed a comprehensive review of Kaspar Wire's recordkeeping practices, and its virtual admission that it had not complied with the recordkeeping rule. The Secretary has never taken the position that she lacks authority or would decline to issue per instance citations to employers who commit multiple violations of the same regulatory requirement, and in fact has exercised her discretion to propose separate penalties for discrete violations over the years. *See, e.g., RSR Corp.*, 11 O.S.H. Cas. (BNA) 1163, 1180–81 (1983); *Wheeling-Pittsburgh Steel Corp.*, 10 O.S.H. Cas. (BNA) 1242 (1981); *Morris-Knudsen & Assoc.*, 8 O.S.H. Cas. (BNA) 2231, 2239 (1980); *Hoffman Constr. Co.*, 6 O.S.H. Cs. (BNA) 1274 (1978). Consequently, the line of cases that require rulemaking upon a change of policy are inapplicable. *See, e.g., Nat'l Ass'n of Home Health Agencies, v. Schweiker*, 690 F.2d 932, 949 (D.C.Cir. 1982); *cf. Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156, 168 (D.C.Cir.1997) (citing 5 U.S.C. § 553). In addition, there is nothing to Kaspar Wire's contention that per-instance penalties "encode[ ] a substantive value judgment or put[ ] a stamp of approval or disapproval on a given type of behavior," *American Hosp.*

*Ass'n v. Bowen,* 834 F.2d 1037, 1047 (D.C.Cir.1987), thereby rendering the policy ineligible for the procedural rule exemption from notice and comment requirements. *See* 5 U.S.C. § 553(b)(A). Such reasoning, as *JEM Broadcasting Co., Inc. v. FCC,* 22 F.3d 320 (D.C.Cir.1994), points out, "threatens to swallow the procedural exception to notice and comment, for agency housekeeping rules often embody a judgment about what mechanics and processes are most efficient." *Id.* at 328. Kaspar Wire's reliance on the Fifth Circuit's "substantial impact" standard for notice and comment requirements, *see Brown Express, Inc. v. United States,* 607 F.2d 695, 702 (5th Cir.1979), is unavailing because this circuit has expressly rejected that standard. *See American Postal Workers Union, AFL–CIO v. United States Postal Serv.,* 707 F.2d 548, 560 (D.C.Cir.1983). Furthermore, because the statutory authorization of per instance penalties is so clear from the statutory language, publication in the *Federal Register* was not required. *See Malkan FM Assoc. v. FCC,* 935 F.2d 1313, 1318 (D.C.Cir.1991); 5 U.S.C. § 552(a)(2).

█ Finally, OSHA penalties are meant to "inflict pocket-book deterrence." *Atlas Roofing Co. v. OSHRC,* 518 F.2d 990, 1001 (5th Cir.1975), *aff'd,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). Section 666(j) of the Act provides that the Commission is to give "due consideration to the appropriateness of the penalty with respect to the size of the business of the employer charged, the gravity of the violation, the good faith of the employer, and the history of previous violations." The Commission found that Kaspar Wire is a moderate-to-large sized company employing approximately 850 to 900 employees with a history of few previous OSHA violations; none of which pertained to recordkeeping. It noted that the gravity of recordkeeping violations is generally considered low. It reasonably declined, however, to accord good faith credit to Kaspar Wire in light of the fact that the bulk of the violations were willful and the failures to record were "largely so obvious." The Commission affirmed the Administrative Law Judge's per instance penalties in the amount of $250–$1000 per item, and upon deducting $17,000 for various vacated items, affirmed an aggregate penalty of $210,500 for willful recordkeeping violations. The Commission also affirmed an aggregate penalty of $4,875 for non-serious restricted workday recording violations based on the change in characterization. Kaspar Wire does not contend that the Commission failed to give due consideration to these penalty criteria, nor (apart from its objection to the Secretary's authority to impose per-instance penalties) does it claim that the specific penalty amounts assessed for each violation were excessive.

Accordingly, we deny the petition for review.