Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 20, 2004       Decided April 6, 2004

No. 03-1096

FRANK LILL & SON, INC.,
PETITIONER

v.

SECRETARY OF LABOR,
RESPONDENT

On Petition for Review of an Order of the
Occupational Safety and Health Review Commission

*Paul M. Sansoucy* argued the cause for the petitioner.

*Michael P. Doyle*, Attorney, United States Department of Labor, argued the cause for the respondent. *Allen H. Feldman*, Associate Solicitor, and *Nathaniel I. Spiller*, Deputy Associate Solicitor, United States Department of Labor, were on brief. *Joseph M. Woodward*, Attorney, United States Department of Labor, entered an appearance.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: HENDERSON, RANDOLPH and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Secretary of Labor (Labor), through the Occupational Safety and Health Administration (OSHA), cited Frank Lill & Son, Inc. (Lill) for willful violation of 29 C.F.R. § 1926.501(b)(1) which requires an employer to provide fall protection where employees work on a surface with an unprotected edge more than 6 feet above the level below. The Administrative Law Judge (ALJ) affirmed the citation as serious (rather than willful) and his decision became the final order of the Occupational Safety and Health Review Commission (OSHRC, Commission). Lill petitioned for review of the final order. For the reasons set forth below, we deny the petition for review.

## I.

Lill is in the business of constructing power plants and process piping installations. In April 2001 Lill began construction of two eighty-foot heat recovery steam generators (HRSGs) in Newington, New Hampshire under a subcontract with general contractor Fluor Constructors (Fluor). On January 24, 2002 at about 9:30 a.m. OSHA Compliance Officer Stephen Rook visited the construction site to conduct a safety inspection. When he arrived, Rook went to Fluor's job trailer and spoke with Fluor safety director Jim Reese, who accompanied Rook on an inspection of the site.

During his inspection, Rook observed two Lill employees at HRSG No. 2 "working at a platform approximately 100 feet up in the air without fall protection." Tr. 16. He walked to HRSG No. 2 and began to climb its stairway toward the workers. While ascending, he encountered Lill site foreman Bob Brown. According to Rook, he informed Brown he was "on site for a complaint" and had "observed employees working without fall protection." Tr. 18. Rook then continued up the stairs and saw two employees, Real Savoy and Kevin Gross, "working at the edge of the platform without fall protection." Tr. 19. He photographed Savoy. Savoy's only

visible protection consisted of a horizontal wire rope, about 18 inches high, at the edge of the platform and "a ratline or horizontal lifeline" above his shoulder. Tr. 23. Rook spoke with Savoy and Gross who informed him that working without fall protection "was a pattern throughout the worksite or throughout the HRSGs on days prior, that employees weren't always tied off" and that "there isn't a convenient place to tie off." Tr. 25. They also told Rook that members of Lill management "had been working in the area when employees weren't tied off." *Id.*

A short time later, Rook met with Lill foreman Ron Tanguay, explained who he was and why he was at the site and stated he had seen employees working without fall protection. When asked, Tanguay confirmed that working without fall protection was "a recurring pattern," Tr. 29, and told him of an incident 7-10 days earlier when Lill employee Rick Chamberlain "had slipped and fallen while walking along the platform on the HRSG," Tr. 30. After this conversation, Rook began to climb down the stairs to interview Chamberlain. While descending the stairs, Rook observed and photographed another Lill employee, Steve Drew, working without fall protection about 75 feet above the ground. Rook proceeded down the stairs and located Chamberlain. When asked about his fall, Chamberlain explained he had fallen toward the edge of the platform from about eight feet in and had landed about three feet from the edge. He also told Rook he had not been tied off. After this conversation, Rook inspected HRSG No. 1 and, although the workers there were tied off, Lill foreman Dwight Grant informed him "it was a frequent occurrence for employees not to be tied off while working on the HRSG." Tr. 40.

The following day Rook returned to the Newington site and spoke with three members of Lill management–site manager Bill Cole, site foreman Brown and site safety representative Neil Briscoe–and told them of his "findings the day earlier, inadequate fall protection which had occurred on the HRSGs." Tr. 45. He then accompanied them to the top of HRSG No. 1 and "explained to them they had three options that they use according to the minimum OSHA standards, a

fall protection system, a safety net system or a guardrail system." Tr. 46. Rook visited the site a third time on January 28, 2002 and spoke with Briscoe and Cole. Finally, on February 22, 2002 Rook met with management from all of the site contractors, including Lill, and discussed his inspection and the deficiencies he had observed.

On March 8, 2002 OSHA issued a citation to Lill for willful violation of 29 C.F.R. § 1926.501(b)(1), which provides: "Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems." Specifically, the citation alleged that Lill employees "were not adequately protected from falls of approximately 85 feet while working on HRSG #2." JA 327. OSHA proposed a penalty of $49,500. Lill contested the citation and on April 14, 2002 the Secretary issued a complaint alleging that Lill had violated section 1926.501(b)(1) as described in the citation. Following an evidentiary hearing, the ALJ issued a decision, docketed January 9, 2003, which affirmed OSHA's citation but amended it from "willful" to "serious" and imposed a $5,000 fine.

Lill filed a petition for discretionary review by the Commission. When no Commissioner directed review within 30 days of the ALJ's decision, that decision became the Commission's final order on February 10, 2003. *See* Notice of Final Order, OSHRC Docket No. 02-0564 (dated Feb. 11, 2003) (citing 29 C.F.R. §§ 2200.90(d), 661(j)).

Lill filed a timely petition for review on April 3, 2003.

## II.

Lill first challenges the substance of the ALJ's violation finding and then raises three additional legal arguments. We address Lill's contentions in order.

### A. *The Finding of Violation*

First, Lill challenges the ALJ's finding of a violation on four grounds: (1) it is contrary to the evidence because the

wire rope stretched along the platform perimeter qualifies as a "guardrail system" within the meaning of section 1926.501(b)(1); (2) the interpretation of the statutory term "guardrail system" adopted by the Secretary is unreasonable; (3) the ALJ erred in finding that anyone other than Gross and Savoy was exposed to fall hazard and (4) the ALJ erred in finding Lill had constructive and actual notice of the violative conditions.

We conclude that the last three challenges have not been preserved for review because they were not raised in the petition for discretionary review (PDR) before the Commission. The Occupational Safety and Health Act expressly states: "No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 660(a). Because of this statutory prohibition, "[i]n cases where the Commission declines to review the ALJ decision, we and our sister circuits have uniformly held that courts of appeals lack jurisdiction over objections not raised in the PDR." *A.J. McNulty & Co., Inc. v. Sec'y of Labor*, 283 F.3d 328, 332 (D.C. Cir. 2002) (citing *Durez Div. of Occidental Chem. Corp. v. OSHA,* 906 F.2d 1, 5 (D.C. Cir. 1990); *P. Gioioso & Sons v. OSHRC,* 115 F.3d 100, 107 (1st Cir. 1997)). In its PDR Lill raised the following objection to the finding of violation:

> The Judge's finding that the Secretary had met her burden of proof with respect to a violation of the fall protection standard was contrary to the evidence and Commission precedent. Contrary to the Judge's finding, there is no proof that an unprotected edge existed, in that the total perimeter of the HRSG was guarded by 5/8" wire rope.

JA 426. This language put the Commission on notice of only the first of Lill's challenges here–that the wire rope constitutes a "guardrail system" in compliance with the OSHA standard. The PDR makes no reference to the other three objections Lill now asserts. Because the Commission had no

opportunity to consider these objections, we are without jurisdiction to do so. *Cf. Durez*, 906 F.2d at 5 (where PDR simply stated "the Standard exceed[s] the statutory authority granted," with no discussion, citation to authority or basis for challenge, "petitioner's abbreviated mention of its challenge to the validity of the Standard is 'wholly inadequate to satisfy the requirement of § 660(a) that an objection be "urged before the Commission" ' ") (quoting *Power Plant Div., Brown & Root, Inc. v. OSHRC*, 659 F.2d 1291, 1293 (5th Cir. 1981) (quoting 29 U.S.C. § 660(a))); *see also P. Gioioso*, 115 F.3d at 107 ("[A]n aggrieved party desiring to preserve an issue for judicial review must raise it before the ALJ, articulate it clearly in its PDR, and offer a modicum of developed argumentation in support of it.") (citing *Durez*, 906 F.2d at 5). We now address the one challenge properly before the court.

Lill contends the ALJ ignored the presence of the perimeter wire rope which, Lill insists, qualifies as a guardrail system under section 1926.501(b)(1). Although the ALJ did not specifically mention the wire rope in his decision, he expressly supported his finding of violation by citing a portion of the hearing transcript in which Rook testified that he "evaluated" the wire cable "according to [the] OSHA guardrail standards and [that] that was inadequate" because "[a]n adequate guardrail system has a top rail at 42 inches [and] a midrail at 21 inches." Tr. 23. Rook based his determination on 29 C.F.R. § 1926.502(b)(2), which sets out specific requirements for a guard rail system:

> Guardrail systems. Guardrail systems and their use shall comply with the following provisions:
>
> (1) Top edge height of top rails, or equivalent guardrail system members, shall be 42 inches (1.1 m) plus or minus 3 inches (8 cm) above the walking/working level. When conditions warrant, the height of the top edge may exceed the 45-inch height, provided the guardrail system meets all other criteria of this paragraph.
>
> . . .

> (2) Midrails, screens, mesh, intermediate vertical members, or equivalent intermediate structural members shall be installed between the top edge of the guardrail system and the walking/working surface when there is no wall or parapet wall at least 21 inches (53 cm) high.

Because the wire rope on which Lill relies does not meet the requirements of section 1926.502(b)(2),[1] we uphold the ALJ's finding that Lill violated section 1926.501(b)(1) as " 'supported by substantial evidence on the record considered as a whole,' " *S. A. Storer & Sons Co. v. Sec'y of Labor*, No. 02-1307, slip op. at 7 (D.C. Cir. Mar. 19, 2004) (quoting *A.J. McNulty & Co.*, 283 F.3d at 331 (quoting 29 U.S.C. § 660(a))).

### *B. Unpreventable Employee Misconduct*

Second, Lill asserts the ALJ erred in rejecting its defense of "unpreventable employee misconduct." To establish this defense, "an employer must demonstrate that it (1) established a work rule to prevent the reckless behavior and/or unsafe condition from occurring, (2) adequately communicated the rule to its employees, (3) took steps to discover incidents of noncompliance, and (4) effectively enforced the rule whenever employees transgressed it." *P. Gioioso & Sons*, 115 F.3d at 109 (citing *New York State Elec. & Gas Corp. v. Sec'y of Labor*, 88 F.3d 98, 105 (2d Cir. 1996); *Gen. Dynamics Corp. v. OSHRC*, 599 F.2d 453, 458–59 (1st Cir. 1979); *Jensen Constr. Co.*, 7 O.S.H. Cas. (BNA) 1477, 1479 (1979)). Although Lill had in place a rule requiring all employees to be tied off when on catwalks, the ALJ expressly found "this rule was not adequately communicated or enforced as there was abundant evidence that employees, including the site manager, did not tie-off while on the catwalks," Lill field superintendent Steve Billington "appeared confused about the rule, as he testified that employees were in fact permitted to traverse

---

[1] Section 1926.501(b)(1) expressly incorporates by reference the specific criteria contained in section 1926.502(b)(2): "This section sets forth requirements for employers to provide fall protection systems. All fall protection required by this section shall conform to the criteria set forth in § 1926.502 of this subpart."

the catwalks without tying off" and "on-site signs directing employees to wear safety harnesses did not also indicate when the employees were required to tie-off." ALJ Op. 4.[2] The ALJ further noted that "while the company showed that it disciplined employees for fall-related safety violations, it presented no proof that it endeavored to enforce its tie-off rule to employees who were not right at the edge." *Id.* (citing *Southwestern Bell Tele. Co.*, 19 BNA OSHC 1097 (No. 98-1758 2000); Tr. 140-45, 233, 278-79). Given the evidence the ALJ cited–in particular Rook's testimony that Savoy, Gross, Tanguay and Grant (the latter two, as already noted, being foremen) told him during the initial inspection that the rule was violated frequently–the ALJ reasonably determined that Lill did not make out its defense.

### C. *Walk–Around Rights*

Third, Lill challenges the ALJ's refusal to vacate the citation on the ground Lill was denied its "walk-around" rights under 29 U.S.C. § 657(e). Section 657(e) provides:

(e) Employer and authorized employee representatives to accompany Secretary or his authorized representative on inspection of workplace; consultation with employees where no authorized employee representative is present

Subject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) of this section for the purpose of aiding such inspection. Where there is no authorized employee representative, the Secretary or

---

[2] The ALJ acknowledged the evidence that Lill "made efforts to ensure the safety of its employees, such as conducting daily safety inspections, holding daily safety meetings, providing more than enough personal fall arrest systems for its employees, and disciplining employees who were actually within the zone of danger but were not tied off" and consequently downgraded the violation from "willful" to "serious." ALJ Op. 5-6.

his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace.

OSHA's supplemental regulation provides:

§ 1903.8  Representatives of employers and employees. (a) Compliance Safety and Health Officers shall be in charge of inspections and questioning of persons.  A representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Compliance Safety and Health Officer during the physical inspection of any workplace for the purpose of aiding such inspection.  A Compliance Safety and Health Officer may permit additional employer representatives and additional representatives authorized by employees to accompany him where he determines that such additional representatives will further aid the inspection.  A different employer and employee representative may accompany the Compliance Safety and Health Officer during each different phase of an inspection if this will not interfere with the conduct of the inspection.

29 C.F.R. § 1903.8.  Although Rook did not seek out an authorized Lill representative to accompany him during his inspection of the HRSGs, Lill is in no position to complain of the lapse.  Lill management was aware of Rook's presence and made no effort to participate in his inspection.  Lill's safety manager, Timothy Cone, testified he was notified the morning of the inspection by site manager Cole and site safety representative Briscoe that an OSHA inspector was on site.  Further, Rook testified that, when he encountered site foreman Brown on his initial climb up HRSG No. 2, he "invited Mr. Brown to come up and address the issue" of the violation he had observed from the ground but that Brown declined.  Tr. 18.  In any event, Lill has not shown any prejudice it suffered as a result of not being represented during the inspection, a requirement imposed by "every circuit that has considered the issue." *Pullman Power Prods., Inc. v. Marshall*, 655 F.2d 41, 44 (4th Cir. 1981) (citing *Marshall v. C. F. & I. Steel Corp.*, 576 F.2d 809, 813-14

(10th Cir. 1978); *Marshall v. Western Waterproofing Co., Inc.*, 560 F.2d 947, 952 (8th Cir. 1977); *Hoffman Constr. Co. v. OSHRC*, 546 F.2d 281, 282-83 (9th Cir. 1976); *Hartwell Excavating Co. v. Dunlop*, 537 F.2d 1071, 1073 (9th Cir. 1976); *Chicago Bridge & Iron Co. v. OSHRC*, 535 F.2d 371, 377 (7th Cir. 1976); *Accu-Namics, Inc. v. OSHRC*, 515 F.2d 828, 833 (5th Cir. 1975), *cert. denied*, 425 U.S. 903 (1976)).

### D. *"Serious" Violation*

Finally, Lill asserts the ALJ lacked authority to amend the citation to allege a "serious" rather than "willful" violation. Lill argues that only the Secretary may amend her citation and that the ALJ was required to affirm the citation as either willful or, if he found insufficient intent, as other-than-serious.[3] The Commission has developed the following policy:

> Where the Secretary alleges that a violation is willful but fails to prove willfulness, an other-than-serious violation may be affirmed. A serious violation will not be found unless the parties have expressly or impliedly consented to try the issue of whether the violation was serious.

*Atlas Indus. Painters*, 1991 WL 165881, at *4 (OSHRC) (citing *Crawford Constr. Co.*, 1982 WL 22598, at *6 (OSHRC), *rev'd on other ground*, 718 F.2d 1098 (6th Cir. 1983)); *see also Keco Indus.*, 1987 WL 89096, at 11 (OSHRC); *Toler Excavating Co.*, 1975 WL 2637, at *2 (OSHRC). Lill contends that because the Secretary alleged and the parties tried only a willful violation, the ALJ was required to affirm it as other-than-serious. Lill's position overlooks that the Secretary in fact alleged a serious as well as a willful violation. Although the citation identified the violation simply as "willful," the Secretary's complaint alleged it "is a Willful violation . . . or the violation is a Serious violation within the meaning of

---

[3] "[A] willful violation is 'an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements.'" *A.E. Staley Mfg. Co. v. Sec'y of Labor*, 295 F.3d 1341, 1345 (D.C. Cir. 2002) (quoting *Kaspar Wire Works, Inc. v. Sec'y of Labor*, 268 F.3d 1123, 1127 (D.C. Cir. 2001) (quoting *Conie Constr., Inc. v. Reich*, 73 F.3d 382, 384 (D.C. Cir. 1995))).

sections 17(b) and 17(k) of the Act in that there was substantial probability that death or serious physical harm could result from the conditions that existed and [Lill] knew, or with the exercise of reasonable diligence should have known of the presence of the violation." JA 334-35. Lill should not have been surprised, therefore, that the ALJ found the violation to be serious in accordance with the Secretary's complaint.[4]

For the foregoing reasons, the petition for review is

*Denied.*

---

[4] Lill does not dispute that the nature of the violation satisfies the statutory requirements of a serious violation, namely that there be "a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(k).