

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT KNOXVILLE

| | | |
|---|---|---|
| GARRY WAYNE JOHNSON, **Employee,** | ) ) | Docket No.: 2016-03-0301 |
| v. | ) | |
| ALLOY FABRICATION, INC., **Employer,** | ) ) | State File No.: 997-2016 |
| And | ) | |
| AMERICAN INTERSTATE INS. CO., **Carrier.** | ) ) | Judge Pamela B. Johnson |

## EXPEDITED HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on September 21, 2016, on the Request for Expedited Hearing filed by the Employee, Garry Johnson, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue[1] is whether Mr. Johnson's January 6, 2016 injury is compensable under the Workers' Compensation Law in light of the defenses raised pursuant to Tennessee Code Annotated section 50-6-110(a)(1)(willful misconduct),[2] (4) (willful failure to use a safety device), and (5) (willful failure to perform a duty required by law) (2015) by the Employer, Alloy Fabrication, Incorporated, and its carrier, American Interstate Insurance Company. Under section 50-6-110(b), the burden of proof shifts to Alloy to establish the defenses raised. For the reasons set forth below, the Court holds Alloy failed to present sufficient evidence demonstrating that it is likely to prevail at a hearing on the merits that Mr. Johnson's injury is not compensable pursuant to section 50-6-110(a).[3] Accordingly,

---

[1] The parties submitted an Agreed Order entered September 15, 2016, and announced their agreement to limit the issue for resolution at the Expedited Hearing to the "compensability of the claim in light of the defenses raised pursuant to TCA § 50-6-110(a)(1), (4) and (5). All other matters raised by the dispute certification notice are to be held in abeyance for the hearing at another time, pending the outcome of the issued to be determined on September 21, 2016."

[2] Alloy admitted that it was currently unaware of sufficient facts to prove Mr. Johnson's willful misconduct as required by section 50-10-110(a)(1)-willful misconduct, and chose to focus its argument on subsections (4)-failure or refusal to use a safety device, and (5)-failure to perform a duty required by law.

[3] The attached Appendix contains a complete listing of the technical record and exhibits admitted at the Expedited Hearing.

1

based upon the evidence presented at this time, this Court concludes Mr. Johnson is likely to prevail at a hearing on the merits that his January 6, 2016 injury is compensable under the Workers' Compensation Law.

## History of Claim

The following facts were established through the evidence presented at the Expedited Hearing. Mr. Johnson is a sixty-six-year-old resident of Anderson County, Tennessee and worked for Alloy as a laborer. Alloy manufactures industrial boilers for the food industry.

On January 6, 2016, Mr. Johnson used a scissor lift to reach the top of a boiler, twenty feet in height and six feet in diameter. He exited the scissor lift to work atop the boiler. As he turned to step back into the scissor lift, he fell to the ground and suffered serious injuries. Mr. Johnson does not recall his fall; the last thing he remembers is being in the scissor lift. Charles Milani, a coworker, witnessed Mr. Johnson's fall and testified as to Mr. Johnson's movements prior to and at the time of his fall.[4]

At the time of the fall, Mr. Johnson was not wearing a safety harness. As such, the focus of the testimony was whether Alloy required Mr. Johnson to wear a safety harness while working atop the boiler; and if so, whether his failure to wear a safety harness at the time of his fall resulted from his willful failure to use a safety device and/or willful failure to perform a duty required by law under section 50-6-110(a)(4), and (5).

Concerning the safety requirement purportedly violated by Mr. Johnson, Steve Irons, Vice-President of Alloy, testified that Alloy required its employees to take proper steps to insure their safety while working at an elevation above six feet. Mr. Irons explained employees were not required to wear a safety harness and tie-off while working inside the scissor lift due to its enclosure. However, he stated it was "general common sense" for employees to use a safety harness and tie-off while working at heights outside the scissor lift. Mr. Irons indicated he corrected safety violations when observed, but he could not recall disciplining any employee for failing to tie-off when working at an elevation above six feet. He went on to later testify, "I don't enforce these rules . . . I can't say that it was drilled into their head."

Tina Headrick, Secretary and Safety Coordinator at Alloy, testified she conducted monthly safety meetings with Alloy employees. She stated that prior to Mr. Johnson's

---

[4] Counsel for Mr. Johnson moved to introduce the Affidavits of Garry Johnson and Charles Milani, and counsel for Alloy objected on grounds of hearsay. The Court took the matter under advisement. Considering that both Mr. Johnson and Mr. Milani were present and testified at the hearing and subject to cross-examination, this Court sustains Alloy's objection. Counsel for Alloy later moved to introduce an audio recording of Mr. Milani's Recorded Statement, and counsel for Mr. Johnson objected on grounds of relevance. This Court sustained the objection during the hearing. Accordingly, this Court did not consider the Affidavits of Garry Johnson and Charles Milani and the Audio Recording of Mr. Milani when making its findings of fact or reaching its conclusions of law.

2

fall, she did not specifically address the requirement to use a safety harness and tie-off when working at elevation of six feet or higher during any of the monthly safety meetings. She further stated she did not know at what elevation Alloy employees were required to use a safety harness and tie-off. She also testified that she did not know whether Alloy employees were told to be tied-off at any given elevation. She testified that, if Mr. Johnson were working at an elevation outside the scissor lift, he should have known that he needed to use a safety harness and tie-off based on the elevation and common sense.

Mr. Milani and Mr. Johnson testified that, while Dow Chemical required Alloy employees to wear a safety harness and tie-off when working above four feet on its site, Alloy employees were not required to wear safety harnesses and tie-off when working on Alloy's premises prior to Mr. Johnson's fall. Mr. Milani testified he observed Alloy employees working every day above six feet without a harness and he never saw anyone disciplined prior to Mr. Johnson's fall. Mr. Johnson testified that he probably worked on seventy-five to one hundred boilers over the twenty-six years he worked at Alloy, he regularly worked above six feet, he was never told to wear a safety harness and tie-off, and he was never disciplined for not wearing a safety harness and tying-off.

Regarding knowledge and enforcement of the safety requirement, Mr. Irons testified Alloy created a safety manual at the recommendation of the insurance carrier, and the manual was in effect at the time of Mr. Johnson's fall. Mr. Irons could not state whether the safety manual was provided to Alloy employees when hired. Ms. Headrick testified that she did not think Alloy has a safety manual signed by Mr. Johnson. Mr. Johnson testified he never saw the safety manual prior to the hearing. Mr. Irons and Ms. Headrick testified that the requirement to wear a safety harness and tie-off at elevations above six feet was not contained in the manual. Mr. Irons and Ms. Headrick confirmed that Alloy did not discipline Mr. Johnson for his failure to use a safety harness and tie-off.

As to the alleged failure to perform a duty required by law, Mr. Irons testified that, in addition to its safety policies, Alloy was bound by OSHA regulations and the safety guidelines of its third party contractor—Dow Chemical, who had a requirement to tie-off when working at elevations above four feet. Mr. Irons admitted that neither he nor Mr. Johnson received official OSHA training with Alloy. Ms. Headrick indicated she was not "fully knowledgeable" of the OSHA regulations and did not know the specific OSHA regulation concerning tying-off when working at an elevation other than knowing a requirement existed. Ms. Headrick admitted she had not received safety training or OSHA training.

During closing arguments, Alloy argued Mr. Johnson's January 6, 2016 fall is not compensable under the Workers' Compensation Law pursuant to Tennessee Code Annotated section 50-6-110(a)(4) and (5). Alloy asserted Mr. Johnson was aware of the

3

danger and proceeded in the face of a known danger, casting safety and safety rules to the wind. Therefore, he was hurt as a consequence of his own willful failure to use a safety device. Alloy further asserted Mr. Johnson failed to comply with OSHA regulations concerning the requirement that an employee use protection if working at a height of six feet or greater.

Mr. Johnson countered Alloy failed to establish that Mr. Johnson had actual knowledge of a clearly defined safety rule, that Alloy strictly enforced a known safety rule, that Mr. Johnson knew of the consequences of violating the safety rule, and that Mr. Johnson willfully violated the rule without a reasonable excuse. Mr. Johnson further argued Alloy failed to establish that Mr. Johnson had any OSHA training and as such, it would be inappropriate to bar his recovery due to a violation of an OSHA regulation.

## Motion for Involuntary Dismissal

Mr. Johnson moved for a directed verdict at the close of Alloy's proof. This Court took Mr. Johnson's motion under advisement and informed the parties that the Court would set forth its findings in this Expedited Hearing Order.

Rule 50.01 of the Tennessee Rules of Civil Procedure governs a motion for directed verdict for cases involving trials by jury. In nonjury cases, a motion for involuntary dismissal is permissible and governed by Rule 41.02(2). An involuntary dismissal is often referred to as a "directed verdict" even in nonjury cases.

The standard of review applied is the same for involuntary dismissals in nonjury cases as the standard of review applied in directed verdicts in jury cases. In *Burchfield v. Renfree*, 2013 Tenn. App. LEXIS 685 (Tenn. Ct. App. Oct. 18, 2013), the Court of Appeals reiterated the principles regarding directed verdicts:

> The rule for determining a motion for directed verdict requires the trial judge and the appellate courts to look to all of the evidence, take the strongest, legitimate view of the evidence in favor of the opponent of the motion and allow all reasonable inferences from it in his favor. The court must disregard all countervailing evidence and if there is then any dispute as to any material, determinative evidence or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence.

*Id.* at *86-87 (internal citations omitted). In this case, the Court finds that reasonable minds can differ as to the conclusions to be drawn from the evidence.

4

Additionally, a motion for involuntary dismissal is rarely appropriate in a workers' compensation case inasmuch as a reversal of the trial court's ruling results in additional proceedings and undue delay. *See Cunningham v. Shelton Sec. Serv.*, 46 S.W.3d 131, 137-38 (Tenn. 2001). *See also Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706 (Tenn. 2007). The trial court should instead hear the entire case and make appropriate findings of fact, and alternative findings when necessary, for appellate review. *Id.*

Moreover, Mr. Johnson moved for an involuntary dismissal at the Expedited Hearing stage. The Expedited Hearing results in an Expedited Hearing Order, or an interlocutory order, which is not a final order. *See* Tenn. Code Ann. § 50-6-239(d)(3) (2015). Interlocutory orders are subject to modification at any time prior to the Compensation Hearing. *Id.*

For these reasons, this Court concludes that an involuntary dismissal of Alloy's affirmative defenses is not warranted. Accordingly, the Court denies Mr. Johnson's motion for involuntary dismissal at this time.

## Findings of Fact and Conclusions of Law

The Court now turns to the legal principles it must apply to determine whether Alloy satisfied its burden of proof to establish the defenses asserted under section 50-6-110(a)(4) and (5). Alloy need not prove every element of its defenses by a preponderance of the evidence in order to succeed at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, it must come forward with sufficient evidence from which this Court might determine it is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

With the above principles in mind, section 50-6-110(a) provides, in part, the following: "No compensation shall be allowed for an injury or death due to: (4) The employee's willful failure or refusal to use a safety device; (5) The employee's willful failure to perform a duty required by law[.]" The Workers' Compensation Law precludes compensation in circumstances where the injury was "due to" the employee's willful actions or inactions. "Due to" means the proximate cause of the injury and not merely a remote or contributing cause. *See Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 449 (Tenn. 2012).[5]

---

[5] At the time the Tennessee Supreme Court decided *Mitchell*, Tennessee Code Annotated section 50-6-116 (2012) declared the Workers' Compensation Act to be "a remedial statute, which shall be given an equitable construction by the courts, to the end that the objects and purposes of [the Act] may be realized and attained." Tenn. Code Ann. § 50-6-116. "This previous statutory preference for an equitable construction and a remedial application played no role in the outcome of *Mitchell*; accordingly, we are bound by its principles." *Scarbrough v. Right Way Recycling, LLC*, No. 2014-03-0006, 2015 Tn. Wrk. Comp. App. Bd. LEXIS 9, at *13 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2015).

5

Alloy avers Mr. Johnson's injury occurred as a result of his willful failure or refusal to use a safety device. In *Mitchell*, the Court held that for an employer to establish the defenses of willful failure or refusal to use a safety device, an employer must prove the following elements: "(1) The employee's actual, as opposed to constructive, notice of the rule; (2) The employee's understanding of the danger involved in violating the rule; (3) The employer's bona fide enforcement of the rule; and (4) The employee's lack of a valid excuse for violating the rule." *Mitchell*, 368 S.W.3d at 453. In applying the four elements to the present case, this Court concludes that Alloy failed to meet its statutory burden to prove the defenses of willful failure or refusal to use a safety device.

As to the first element, Alloy failed to establish that Mr. Johnson had actual, as opposed to constructive, notice of the safety rule. Mr. Irons testified it was general "common sense" for employees to use a safety harness and tie-off while working at heights outside the scissor lift. Ms. Headrick, Alloy's Safety Coordinator, testified that prior to Mr. Johnson's fall, she did not specifically address the requirement to use a safety harness and tie-off when working at an elevation of six feet or higher during any of the monthly safety meetings. She further stated she did not know at what elevation Alloy employees were required to use a safety harness and tie-off. She also testified that she did not know whether Alloy employees were told to be tied-off at any given elevation. She testified that, if Mr. Johnson were working at an elevation outside the scissor lift, he should have known he needed to use a safety harness and tie-off based on the elevation and common sense. Mr. Milani and Mr. Johnson testified that, while Dow Chemical required Alloy employees to wear a safety harness and tie-off when working above four feet on its site, Alloy employees were not required to wear safety harnesses and tie-off when working on Alloy's premises prior to Mr. Johnson's fall.

Taking the second and third element together, Alloy failed to demonstrate that Mr. Johnson understood the danger involved in violating the safety rule or that Alloy enforced the safety rule. Mr. Johnson acknowledged it was common sense that injury would occur from a fall from twenty feet. Mr. Irons testified that using the safety harness and tie-off would have prevented Mr. Johnson's fall. While the risk of injury was "common sense," Mr. Irons and Ms. Headrick failed to point to the specific safety rule in Alloy's safety handbook or identify the employment consequences for violations of the safety rule. Neither Mr. Irons nor Ms. Headrick could recall correcting or otherwise disciplining an Alloy employee for the failure to use the safety harness or tie-off when working outside the scissor lift at an elevation above six feet prior to Mr. Johnson's fall. Mr. Milani testified that, prior to Mr. Johnson's fall, he observed Alloy employees working every day above six feet without a harness, and he never saw anyone disciplined. Mr. Johnson testified he regularly worked above six feet, he was never told to wear a safety harness and tie-off, and he was never disciplined for not wearing a safety harness

and tie-off. Mr. Irons and Ms. Headrick confirmed that Alloy did not discipline Mr. Johnson for his failure to use a safety harness and tie-off on January 6, 2016.

Turning to the fourth element, Alloy failed to satisfy its burden of proof in establishing (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; and (3) the employer's bona fide enforcement of the rule, so it is unnecessary for the Court to determine whether the employee had a valid excuse for violating the rule.

Based on the foregoing, this Court concludes Alloy failed to demonstrate it is likely to prevail at a hearing on the merits as to the affirmative defense of willful failure or refusal to use a safety device.

*Willful Failure to Perform a Duty Required by Law*

Alloy further averred that Mr. Johnson's injury occurred due to his willful failure to perform a duty required by law. Alloy asserted Mr. Johnson failed to comply with Rule 1926.501 of the Occupational Safety and Health (OSHA) regulations. OSHA Regulations provide, in part, the following concerning the duty to have fall protection:

> (a) General.
> (1) This section sets forth requirements for employers to provide fall protection systems. . .
> (b)
> (1) Unprotected sides and edges. Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems.

29 C.F.R. § 1926.501(b)(1) (2016).

Alloy argues Mr. Johnson's willful violation of this rule bars his recovery of worker's compensation benefits for his January 6, 2016 fall. This Court disagrees. Of importance, this Court notes section 1926.501(a) states, "[t]his section sets forth requirements *for employers.*" In other words, OSHA regulations set forth requirements for employers to follow to ensure the safety of its employees, and violations of an OSHA regulation result in penalty against the employer. *See Frank Lill & Son, Inc. v. Sec'y of Labor*, 360 U.S. App. D.C. 398, 362 F.3d 840 (2004).

Moreover, Mr. Irons testified that neither he nor Mr. Johnson received OSHA training with Alloy. Ms. Headrick, the Alloy Safety Coordinator, testified she was not familiar with the specific OSHA regulations. Accordingly, this Court cannot conclude

that Mr. Johnson "willfully" failed to perform a duty required by law.

Both counsel for Alloy and Mr. Johnson confirmed that Tennessee appellate courts have not addressed the defense of failure to perform a duty required by law. Larson's Workers' Compensation Law analyzed the defense and noted:

> The general tendency has been to give these statutes as narrow a construction as the words themselves will bear. In Indiana, one of the commonest methods used to by-pass the statute is a finding that the offense was not the proximate cause of the injury. This type of finding has been upheld when the violation took the form of failing to stop at a railroad crossing when the train had whistled, failure to stop for a through highway, and failure to obtain a chauffeur's license. A school bus driver who, while driving an empty bus, failed to stop for a rail crossing was held not barred, the theory being that the statute requiring such a stop was for the protection of the school children, not the driver. *And an employee who rode an elevator hoist in violation of building codes was awarded compensation, since the rules of the code were designed to be enforced against the employer, not the employee. Moreover, the employer by joining in the violation may bar itself from raising it as a defense.*

3-37 Larson's Workers' Compensation Law § 37.04 (2015) (emphasis added); *see also Kuhner Packing Co. v. Hitchens*, 97 Ind. App. 228, 186 N.E. 262 (1933), and *Motor Freight Corp. v. Jarvis*, 163 Ind. App. 442, 324 N.E.2d 500 (1975).

Accordingly, this Court concludes Alloy failed to demonstrate that it is likely to prevail at a hearing on the merits as to the affirmative defense of willful failure to perform a duty required by law.

*Conclusion*

Therefore, as a matter of law, this Court concludes Alloy failed to present sufficient evidence demonstrating that it is likely to prevail at a hearing on the merits regarding the enumerated defenses of section 50-6-110(a). Accordingly, based upon the evidence presented at this time, this Court concludes Mr. Johnson is likely to prevail at a hearing on the merits that his January 6, 2016 injury is compensable under the Workers' Compensation Law.

**IT IS SO ORDERED.**

1. This matter is set for an Initial (Scheduling) Hearing on **December 7, 2016, at 9:30 a.m. Eastern Time.** The parties must call 865-594-0091or 855-543-5041

toll free to participate in the Initial Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

2. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

3. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 27th day of October, 2016.**

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing

9

fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Technical Record:
- Petition for Benefit Determination, filed March 30, 2016;
- Dispute Certification Notice, filed May 10, 2016;
- Request for Expedited Hearing, filed June 22, 2016;
- Agreed Order, issued September 15, 2016; and
- Defendant's Trial Brief, filed September 16, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulations of Finding of Facts:
- The date of injury is January 6, 2016.
- Alloy received timely notice of Mr. Johnson's January 6, 2016 injury.
- Mr. Johnson timely filed his Petition for Benefit Determination within the applicable statute of limitations.

Exhibits:
- EXHIBIT 1: (Marked for ID Only) Affidavit of Garry Johnson;
- EXHIBIT 2: (Marked for ID Only) Affidavit of Charles Milani;
- EXHIBIT 3: Photographs;
- EXHIBIT 4: Alloy Fabrication, Inc.'s Safety Manual; and
- EXHIBIT 5: (Marked for ID Only) (Audio CD) Charles Milani Witness Recorded Statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of October, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Brad C. Burnette, Esq., Employee's Attorney | | | X | bradburnette@foxandfarley.com |
| Louis A. McElroy, Esq. Employer's Attorney | | | X | drew@drewmcelroy.net |

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**